012791/00006/01951468

**HILL WALLACK LLP**
**Maeve E. Cannon, Esq. (MC0574)**
202 Carnegie Center
Princeton, New Jersey 08543
(609) 924-0808
mec@hillwallack.com
Attorneys for Defendants,
Cole Layer Trumble Company and Tyler Technologies, Inc.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| BEACH CREEK MARINA, INC., | CIVIL ACTION NO. 2:09-CV-2649 |
| Plaintiff, | **Document electronically filed** |
| v. | **Request for Oral Argument** |
| ROYAL TAX LIEN SERVICES, LLC d/b/a CRUSADER LIEN SERVICES, COLE LAYER TRUMBLE COMPANY, and TYLER TECHNOLOGIES INC., | **Motion Return Date: August 17, 2009** |
| Defendants. | |

---

**BRIEF IN SUPPORT OF DEFENDANTS COLE LAYER TRUMBLE COMPANY
AND TYLER TECHNOLOGIES INC.'S MOTION TO DISMISS PLAINTIFF'S
COMPLAINT IN LIEU OF ANSWER**

---

Of counsel and on the brief:
Maeve E. Cannon, Esq.

On the brief:
Megan McGeehin Schwartz, Esq.

## TABLE OF CONTENTS

PRELIMINARY STATEMENT............................................. 2

STATEMENT OF FACTS AND PROCEDURAL HISTORY........................ 4

LEGAL ARGUMENT................................................... 8

    POINT I   TYLER'S MOTION TO DISMISS PURSUANT TO F.R.C.P.
12(b)(6) MUST BE GRANTED BECAUSE BCM HAS FAILED TO STATE A
CLAIM FOR WHICH RELIEF COULD BE GRANTED AND TYLER IS ENTITLED
TO JUDGMENT AS A MATTER OF LAW............................... 8

    A.   STANDARD OF REVIEW ...................................... 8

    B.   BCM'S COMPLAINT MUST BE DISMISSED BECAUSE IT FAILED TO
TIMELY CHALLENGE THE CITY'S 2006 TAX ASSESSMENT OF ITS
PROPERTY. ................................................ 10

    C.   BCM'S COMPLAINT MUST BE DISMISSED PURSUANT TO THE TAX
INJUNCTION ACT, 28 U.S.C.A. §1341. ....................... 13

    D.   BCM'S CLAIMS OF NEGLIGENCE AND PROFESSIONAL MALPRACTICE
MUST BE DISMISSED BECAUSE TYLER OWED NO LEGAL DUTY TO BCM. 18

    E.   BCM'S CLAIM OF BREACH OF CONTRACT MUST BE DISMISSED
BECAUSE BCM IS NOT A THIRD-PARTY BENEFICIARY TO TYLER'S
CONTRACT WITH THE CITY OF NORTH WILDWOOD. ................. 24

    F.   BCM'S CLAIM OF UNJUST ENRICHMENT MUST BE DISMISSED
BECAUSE THE CITY OF NORTH WILDWOOD PAID TYLER FOR THE
REVALUATION SERVICES IT PERFORMED. ....................... 29

    G.   BCM'S CLAIM OF BREACH OF IMPLIED COVENANT MUST BE
DISMISSED BECAUSE NO CONTRACT WAS ENTERED INTO BETWEEN TYLER
AND BCM. ................................................. 32

CONCLUSION...................................................... 35

## TABLE OF AUTHORITIES

**Cases**

Ass'n Group Life, Inc. v. Catholic War Vets. of U.S., 61 N.J. 150, 153 (1972) ............................................ 32

Bak-A-Lum Corp. v. Alcoa Bldg. Prod., 69 N.J. 123, 129-130 (1976) ..................................................... 31

Beach Creek Marina v. City of North Wildwood, 2009 WL 1361651 (App. Div. 2009) ......................................... 4, 10

Borough of Sayreville v. Union Carbide Corp., 923 F.Supp. 671, 676 (D.N.J. 1996) ......................................... 7

Borough of West Caldwell v. Borough of Caldwell, 26 N.J. 9, 29 (1958) ..................................................... 29

Broadway Maint. Corp. v. Rutgers, The State Univ., 90 N.J. 253, 259 (1982) ............................................... 23, 27

Brooklawn v. Brooklawn Housing Corp., 124 N.J.L. 73 (E. & A. 1940) ..................................................... 24

California v. Grace Brethren Church, 457 U.S. 393, 413, 102 S.Ct. 2498, 2510, 73 L.Ed.2d 93, 109 (1982) ................ 15

Carvalho v. Toll Bros. and Developers, 143 N.J. 565, 573-574 (1996) ..................................................... 20

F.M.C. Stores Co. v. Borough of Morris Plains, 100 N.J. 418 (1985) ..................................................... 10

Fair Assessment in Real Estate Ass'n v. McNary, 454 U.S. 100, 103, 102 S.Ct. 177, 179, 70 L.Ed.2d 271, 275 (1981) 12, 13, 14, 15

Gautam v. DeLuca, 215 N.J. Super. 388, 396 (App. Div. 1987)... 19

General Motors Corp. v. City of Linden, 143 N.J. 336 (1996)... 13

Grand Street Artists v. General Elec. Co., 19 F.Supp.2d 242 (D.N.J. 1998) ..................................................... 21

Great Lakes Dredge & Dock Co. v. Huffman, 319 U.S. 293, 299, 63 S.Ct. 1070, 1073, 87 L.Ed. 1407, 1412 (1943) ............... 13

Hayes v. Community General Osteopathic Hospital, 940 F.2d 54 (3d Cir. 1991) cert. den. 502 U.S. 1060 (1992) ................... 8

J.H. Becker, Inc. v. Township of Marlboro, 82 N.J. Super. 519, 529 (App. Div. 1964) .......................... 11, 18, 19, 21

J.M. ex rel. A.M. v. East Greenwich Tp. Bd. of Educ., No. 07-2861, 2008 WL 819968, at *9 (D.N.J. March 25, 2008) ........ 31

Jama v. United States, I.N.S., 334 F.Supp.2d 662, 686 (D.N.J. 2004) ................................................... 27

Jones v. Township of North Bergen, 331 F.Supp. 1281, 1286 (D.N.J. 1971) ............................................. 12

Labov v. Lalley, 809 F.2d 220, 221 (3d Cir. 1987) ............. 7

Levine v. Wiss & Co., 97 N.J. 242, 246 (1984) ................ 19

Lum v. Bank of America, 361 F.3d 217, 222 n. 3 (3d Cir.), cert. denied, 125 S.Ct. 271 (2004) ................................. 5

MacLeod v. City of Hoboken, 330 N.J. Super. 502 (App. Div. 2000) ....................................................... 11

Mayfair Holding Corp. v. North Bergen Tp., 4 N.J. Tax 38, 40 (Tax 1982) ................................................ 10

Morse v. Lower Merion Sch. Dst., 132 F.3d 902, 906 (3d Cir. 1997) ...................................................... 7

National Amusements, Inc. v. New Jersey Tpk. Auth., 261 N.J. Super. 468, 478 (Law Div. 1992), aff'd, 275 N.J. Super. 134 (App. Div. 1994) ............................................ 29

Newark v. Fischer, 3 N.J. 488 (1950) .......................... 9

Noye v. Hoffmann-La Roche Inc., 238 N.J. Super. 430, 434 (App. Div.), certif. denied, 122 N.J. 146 (1990) .................. 32

Rosewell v. LaSalle Nat'l Bank, 450 U.S. 503, 522, 101 S.Ct. 1221, 1233, 67 L.Ed.2d 464 (1981) ................... 14, 15, 17

S.P. v. Collier High School, 319 N.J. Super. 452, 467 (App. Div. 1999) ...................................................... 20

Sons of Thunder, Inc. v. Borden, 148 N.J. 396, 419 (1997)..... 32

Space v. BRPM Towing Service, Inc., No. 07-947, 2007 WL 4570157, at *6 (D.N.J.2007) ......................................................... 31

St. Paul Fire & Marine Insurance Co. v. Indemnity Insurance Co., 32 N.J. 17, 22 (1960) ...................................................... 31

Standard Gas Power Corp. v. New England Casualty Co., 90 N.J.L. 570, 573-74 (E. & A. 1917) .................................................. 24

Suburban Transfer Serv., Inc. v. Beech Holdings, Inc., 716 F.2d 220, 226 (3d Cir.1983) ...................................................... 29

Sykes v. Propane Power Corp., 224 N.J. Super. 686 (App. Div. 1988) ...................................................................... 21

Van Dyne v. Vreeland, 11 N.J.Eq. 370, 379 (Ch. 1857).......... 24

Van Orman v. American Ins. Co., 680 F.2d 301, 310 (3d Cir.1982) ............................................................................ 29, 31

VRG Corp. v. GKN Realty Corp., 135 N.J. 539, 554 (1994)... 29, 30

Wade v. Kessler Institute, 343 N.J. Super. 338 (App. Div. 2001) ............................................................................ 32

Wilson v. Amerada Hess Corp., 168 N.J. 236, 244 (2001) 31, 32, 33

Zielinski v. Professional Appraisal Associates, 326 N.J. Super. 219, 225-226 (App. Div. 1999).............................................. 20

**Rules**

F.R.C.P. 12(b)(6)......................................................... passim

N.J.A.C. 18:12-4.5..................................................... 25, 33

N.J.A.C. 18:12-4.8............................................. 4, 18, 22, 27

N.J.A.C. 18:12-4.9........................................................ 4, 27

**Statutes**

28 U.S.C.A. §1341....................................................... 12, 13

N.J.S.A. 2A:15-2............................................................ 23

N.J.S.A. 40A:9-148.1...................................................... 4, 18

N.J.S.A. 54:1-35.35.......................................... 3

N.J.S.A. 54:1-35.36...................................... 25, 30

N.J.S.A. 54:3-21......................................... 9, 16

N.J.S.A. 54:3-27.2.......................................... 16

N.J.S.A. 54:5-52............................................. 5

**Treatises**

Restatement (Second) of Contracts §313(2)..................... 26

## **PRELIMINARY STATEMENT**

Defendants, Cole Layer Trumble Company and Tyler Technologies, Inc. (hereinafter referred to as collectively "Tyler"),[1] move to dismiss plaintiff's complaint in its entirety with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff, Beach Creek Marina's ("BCM") complaint is nothing more than an improper and untimely attempt to (1) challenge the tax assessment of its property; and (2) prevent the foreclosure of a tax lien certificate on the property, which was the result of the property owner's failure to pay property taxes.

Pursuant to New Jersey tax appeal law, aggrieved taxpayers have a limited timeframe within which to file appeals of assessments with the county tax board wherein the property is located or the Tax Court. Specifically, taxpayers aggrieved by the assessed valuation of the taxpayer's property may appeal directly to the Tax Court, when, as here, the assessed valuation of the property subject to the appeal exceeds $750,000.00, on or before April 1, or 45 days from the date the bulk mailing of notification of assessment is completed, whichever is later. Similarly, in a taxing district where a municipal-wide

---

[1] Effective February 4, 2005, Cole Layer Trumble Company was merged with and into Tyler Technologies, Inc., a Delaware corporation. Prior to the merger, Cole Layer Trumble Company was a wholly-owned subsidiary of Tyler Technologies, Inc.

revaluation or municipal-wide reassessment has been implemented, as here, a taxpayer may appeal to the Tax Court on or before May 1. Failure to comply with the statutory timeframes is a fatal jurisdictional defect that cannot be remedied through creative pleading.

Despite claims of negligence, professional malpractice, third-party beneficiary status, unjust enrichment and breach of implied covenant, this case is simply an attempted end run around the statutory tax appeal process. BCM failed to timely file a tax appeal of its 2006 assessment with the Tax Court and as a result, its challenge was dismissed. The causes of action contained in BCM's complaint all arise out of the singular fact that BCM is dissatisfied with its 2006 property tax assessment. Such dissatisfaction must be addressed to the Tax Court within the timeframes provided in New Jersey's statutory tax appeals process. BCM's failure to do so requires dismissal of the instant complaint with prejudice.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

In or about May 2003, after public bidding, the City of North Wildwood, New Jersey (the "City") engaged Tyler to perform a municipal-wide revaluation of properties in the City for tax assessment purposes. (Complaint ¶7). As a matter of public record, this was the first revaluation performed by the City since 1989.

The City and Tyler entered into a public contract for the performance of revaluation services pursuant to N.J.S.A. 54:1-35.35 and -35.36. (Complaint ¶8). The terms and standards of Tyler's contract, as with any contract for revaluation services, is governed by N.J.A.C. 18:12-4.8 which provides that "the revaluation firm acts as the agent of the municipal tax assessor and all determinations made by the firm shall be submitted to, and approved by, the municipal tax assessor." By statute in New Jersey, the municipal tax assessor "shall have the duty of assessing property for the purpose of general taxation." N.J.S.A. 40A:9-148.1.

Pursuant to its contract with the City, Tyler performed revaluation and assessment services for all properties within the City, including BCM's property. (Complaint ¶9). At the conclusion of the City's revaluation in 2006, BCM's assessment was $14,612,900, which was an increase over the previous year's

assessment of $1,526,200. (Complaint ¶10).  BCM's property taxes also increased from approximately $39,000 in 2005 to approximately $107,000 in 2006. (Complaint ¶11).

By regulation, all taxpayers are afforded an opportunity to review the proposed assessment of their property with a representative of the revaluation firm and a written record of such review must be provided to the tax assessor.  N.J.A.C. 18:12-4.9.  Suggested revisions to the assessment may be made by the firm only with the consent of the tax assessor.  Ibid.

According to the Complaint, "BCM attempted to reconcile this situation with the City of North Wildwood but was not successful. (Complaint ¶12).  The final determination as to the ultimate assessment on any property in a revaluation is solely within the discretion of the tax assessor of the jurisdiction.  N.J.S.A. 40A:9-148.1; N.J.A.C. 18:12-4.8.  Tyler serves in an advisory capacity to the assessor, who makes the final assessment.

In a May 18, 2009 unpublished opinion of the Appellate Division entitled Beach Creek Marina v. City of North Wildwood, 2009 WL 1361651 (App. Div. 2009),[2] the appellate court upheld the

---

[2] Tyler acknowledges that the Third Circuit has held that although "a prior judicial opinion constitutes a public record of which a court may take judicial notice, it may do so on a motion to dismiss only to establish the existence of the opinion, not for the truth of the facts asserted in the

Tax Court's dismissal of BCM's tax appeal. The Tax Court concluded that Beach Creek's appeal had to be filed on or before January 16, 2007 and was not filed until January 18, 2007.

The statutory and regulatory language regarding the respective roles of the tax assessor and the valuation company are consistent with the roles of those parties here, which is described by the Appellate Division as follows:

> According to North Wildwood's tax assessor, 2006 was a "revaluation year" for North Wildwood. Therefore, North Wildwood employed the services of CLT/Tyler technologies to inspect and assess properties within the municipality. The tax assessor would then review and prepare his own assessments to be mailed to taxpayers. (Cannon Cert. Exh. A, page 1)

As a result of BCM's failure to pay property taxes in 2006, the City issued a tax lien certificate on the property in or about January 11, 2007. (Complaint ¶12). Defendant Royal Tax Lien Services, LLC d/b/a Crusader Lien Services ("Royal") purchased the certificate. Ibid. The two (2) year statutory period under N.J.S.A. 54:5-52 has expired and Royal may now foreclose the tax lien certificate. Ibid.

On or about June 3, 2009, apparently to forestall the foreclosure, BCM filed the instant complaint against Tyler and Royal alleging: (1) negligence (Tyler); (2) professional

---

opinion." Lum v. Bank of America, 361 F.3d 217, 222 n. 3 (3d Cir.), cert. denied, 125 S.Ct. 271 (2004) (citation omitted). A copy of the opinion is attached to the Certification of Maeve E. Cannon, Esq. at Exhibit A.

malpractice(Tyler); (3) breach of contract as a third-party beneficiary (Tyler); (4) unjust enrichment (Tyler); (5) breach of implied covenant (Tyler); (6) declaratory judgment as to Royal (two counts); and (7) unjust enrichment as to Royal. (Complaint ¶¶14-41). BCM seeks damages and a declaratory judgment that the tax lien certificate sold by the City is "void and invalid." Tyler's motion to dismiss pursuant to <u>F.R.C.P.</u> 12(b)(6) in lieu of answer follows and for all the reasons set forth below, BCM's complaint must be dismissed in its entirety with prejudice as to Tyler.

## LEGAL ARGUMENT

**POINT I    TYLER'S MOTION TO DISMISS PURSUANT TO F.R.C.P. 12(b)(6) MUST BE GRANTED BECAUSE BCM HAS FAILED TO STATE A CLAIM FOR WHICH RELIEF COULD BE GRANTED AND TYLER IS ENTITLED TO JUDGMENT AS A MATTER OF LAW.**

### A.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a complaint, or a count therein, for failure to state a claim upon which relief may be granted. Specifically, a court may dismiss a complaint for failure to state a claim where it appears beyond doubt that no relief could be granted under any set of facts which could be proved consistent with the allegations of the complaint. _Borough of Sayreville v. Union Carbide Corp._, 923 _F.Supp._ 671, 676 (D.N.J. 1996) (citations omitted).

When evaluating a motion to dismiss a complaint pursuant to _Fed. R. Civ. Pro._ 12(b)(6), the court "must accept as true all well-pleaded allegations of the complaint [ ] and construe them liberally in the light most favorable plaintiffs." _Labov v. Lalley_, 809 _F.2_d 220, 221 (3d Cir. 1987). Nevertheless, a court need not credit a plaintiff's "bald assertions" or "legal conclusions" when deciding a motion to dismiss. _Morse v. Lower Merion Sch. Dst._, 132 _F.3_d 902, 906 (3d Cir. 1997).

Further, the court must determine whether the moving party has established that no material issue of fact remains to be

resolved and that the party is entitled to judgment as a matter of law. Hayes v. Community General Osteopathic Hospital, 940 F.2d 54 (3d Cir. 1991) cert. den. 502 U.S. 1060 (1992).

This court must grant Tyler's motion to dismiss BCM's complaint in its entirety pursuant to Fed. R. Civ. Pro. 12(b)(6) because, even if plaintiff can prove the allegations in the complaint, Tyler is entitled to judgment as a matter of law. As articulated herein, BCM's complaint is essentially an untimely tax appeal requiring dismissal. Although BCM was dissatisfied with its 2006 tax assessment, it failed to file a timely tax appeal pursuant to New Jersey's statutory process. Further, as a matter of law, based on the facts asserted in the Complaint, the causes of action plead by BCM cannot be maintained against Tyler.

The New Jersey Tax Court and Appellate Division dismissed BCM's earlier tax appeal as untimely. At this time, BCM cannot again contest its assessment under the guise of tort and contract claims against Tyler because the instant complaint is also an untimely tax appeal. BCM's failure to timely file a tax appeal is an incurable, jurisdictional defect requiring dismissal of the instant complaint in its entirety with prejudice.

**B.    BCM'S COMPLAINT MUST BE DISMISSED BECAUSE IT FAILED TO TIMELY CHALLENGE THE CITY'S 2006 TAX ASSESSMENT OF ITS PROPERTY.**

This matter must be dismissed pursuant to <u>Fed. R. Civ. Pro.</u> 12(b)(6) because BCM fails to state a claim upon which relief can be granted.  As alleged in BCM's complaint, pursuant to a public contract, Tyler completed a municipal-wide revaluation for the City in 2006, wherein the property BCM owns is located. As a result of this revaluation process, BCM's assessment increased.    Thereafter, BCM's property taxes were also increased.

Pursuant to <u>N.J.S.A.</u> 54:3-21 <u>et</u> <u>seq.</u>, taxpayers aggrieved by the assessed valuation of the taxpayer's property may on or before April 1, or 45 days from the date the bulk mailing of notification of assessment is completed, whichever is later, appeal to the Tax Court, when, as is the case with BCM, the assessed valuation of the property subject to the appeal exceeds $750,000.00.  <u>N.J.S.A.</u> 54:3-21(a).   Similarly, in a taxing district where a municipal-wide revaluation or municipal-wide reassessment has been implemented, as here, a taxpayer may appeal to the Tax Court on or before May 1. <u>Ibid.</u>

These statutory time frames are mandatory and admit of no exception. <u>Newark v. Fischer</u>, 3 <u>N.J.</u> 488 (1950).  Failure to file a timely appeal is a fatal jurisdictional defect. <u>F.M.C.</u>

Stores Co. v. Borough of Morris Plains, 100 N.J. 418 (1985).
Indeed, the Tax Court has termed compliance with the filing
requirements an "unqualified jurisdictional imperative." Mayfair
Holding Corp. v. North Bergen Tp., 4 N.J. Tax 38, 40 (Tax 1982).

Here, BCM failed to adhere to these mandatory statutory
timeframes. Previously, in or around January 18, 2007, BCM
filed an untimely tax appeal. The Tax Court dismissed BCM's
appeal as untimely. Thereafter, the Appellate Division affirmed
the dismissal in an unpublished opinion at Beach Creek Marina v.
City of North Wildwood, 2009 WL 1361651 (App. Div. 2009). BCM
filed the instant complaint with the District Court some two and
one half (2 1/2) years after the mandatory, statutory timeframe
for appeal. This complaint must similarly fail as untimely. In
seeming recognition of the exclusive nature of the remedy before
the tax court, BCM asserted no claims against Tyler until after
its appeal had been dismissed as untimely.

All of BCM's claims arise out of its dissatisfaction with
the City's 2006 assessment of its property. This fact is the
sole basis for BCM's claims of negligence, professional
malpractice, third-party beneficiary status, unjust enrichment
and breach of implied covenant. BCM has not plead any other
facts to support these claims. Regardless of whether all the
facts in the complaint are true, New Jersey courts have held

11

that the statutory tax appeal process provides full administrative review to taxpayers desiring to contest assessments. J.H. Becker, Inc. v. Township of Marlboro, 82 N.J. Super. 519, 529 (App. Div. 1964) ("Mere difference of opinion as to whether the assessed values in the respective townships do, or do not, represent 100% of true value does not justify judicial intervention when the Legislature has provided an aggrieved taxpayer with an adequate administrative review.").

Similarly, New Jersey courts have consistently rejected efforts by taxpayers to circumvent the statutory appeal process by other means. In MacLeod v. City of Hoboken, 330 N.J. Super. 502 (App. Div. 2000), the Appellate Division dismissed an action in lieu of prerogative writ brought by a taxpayer to challenge the fairness of the tax assessments in its town, stating:

> Even in case addressing challenges to the fairness and impartiality of assessments throughout the municipality, an action in lieu of prerogative writ is appropriate only for an initial action to compel an assessor to exercise discretion and perform assessments, not to challenges of the valuation which the assessor established, no matter how inappropriate or inequitable the valuations appear to the taxpayer.

> Id at 508.

So too, where plaintiffs have failed to make applications to the appropriate State tribunals in the tax appeal context, the Federal Courts have not permitted themselves to serve as an

"alternative forum." <u>Jones v. Township of North Bergen</u>, 331 <u>F.Supp.</u> 1281, 1286 (D.N.J. 1971).

Where BCM has had its day in Tax Court, and failed to file its appeal in a timely fashion, no relief is available here and BCM's complaint against Tyler must be dismissed in its entirety with prejudice.

### C.    BCM'S COMPLAINT MUST BE DISMISSED PURSUANT TO THE TAX INJUNCTION ACT, 28 <u>U.S.C.A.</u> §1341.

BCM's complaint must be dismissed pursuant to the Tax Injunction Act, which prohibits federal courts from interfering in state tax matters. Section 1341 prohibits federal courts from enjoining the collection of a state tax "where a plain, speedy and efficient remedy may be had in the courts of such State." 28 <u>U.S.C.A.</u> §1341. This federal statute specifically provides that District Courts shall not intervene in a State tax matter where an adequate remedy exists under State law.

The United States Congress preserved an essential element of federalism in directing federal courts not to interfere in the administration of state tax matters. <u>Fair Assessment in Real Estate Ass'n v. McNary</u>, 454 <u>U.S.</u> 100, 103, 102 <u>S.Ct.</u> 177, 179, 70 <u>L.Ed.</u>2d 271, 275 (1981). It is clear from the United States Supreme Court's analysis in <u>Fair Assessment</u>, that Congress and the federal courts have determined that federal District Courts

must reject taxpayers' efforts to seek relief in the federal courts when adequate state law remedies exist.

In *General Motors Corp. v. City of Linden*, 143 N.J. 336 (1996), the New Jersey Supreme Court concluded that a taxpayer may not bring a §1983 action against a City, tax assessor and property appraiser retained by the City where there was an adequate remedy available under State law.  In fact, as the *General Motors* Court observed, 28 U.S.C.A. §1341 specifically provides that District Courts shall not intervene in a State tax matter where an adequate remedy exists under State law and shall not:

> enjoin, suspend, or restrain the assessment levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the Courts of such state. 28 U.S.C.A. §1341.

Under the Tax Injunction Act, and relying on the principle of comity, the United States Supreme Court has held that federal courts must avoid interfering with state tax matters when the taxpayer seeks (1) an injunction, 28 U.S.C.A. §1341; (2) declaratory relief, *Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293, 299, 63 S.Ct. 1070, 1073, 87 L.Ed. 1407, 1412 (1943); or (3) damages, *Fair Assessment*, *supra*, 454 U.S. at 113, 102 S.Ct. at 184, 70 L.Ed.2d at 281–82.

14

In Fair Assessment, a taxpayers' association filed a federal court action challenging the assessment of real estate in Missouri based on claims that the assessment violated their equal protection and due process rights. There the taxpayers sought damages, as BCM does here. The United States Supreme Court held that taxpayers are barred by the principle of comity from asserting § 1983 actions against the validity of state tax systems in federal courts. In rejecting their claim, the Court found such taxpayers must seek protection of their federal rights by state remedies, provided of course that those remedies are plain, adequate and complete. Id. at 116, 102 S.Ct. at 186, 70 L.Ed.2d at 283.

The Court, drawing on principles underlying section 1341, explained:

> The statute 'has its root in equity practice in principles of federalism, and in recognition of the imperative need of a State to administer its own fiscal operations.' Tully v. Griffin, Inc., 429 U.S. [68], 73 [,97 S.Ct. 219, 222, 50 L.Ed. 2d 227 (1976)]. This last consideration was the principal motivating force behind the Act: this legislation was first and foremost a vehicle to limit drastically federal district court jurisdiction to interfere with so important a local concern as the collection of taxes. 81 Cong.Rec. 1415 (1937) (remarks of Sen. Bone)....
>
> Fair Assessment, supra, 454 U.S. at 110, 102 S.Ct. at 183, 70 L.Ed.2d at 279-80 (quoting Rosewell v. LaSalle Nat'l Bank, 450 U.S. 503, 522, 101 S.Ct. 1221, 1233, 67 L.Ed.2d 464 (1981) (footnote omitted)).

In Fair Assessment, as in the present case, the taxpayers sought damages. The award of damages, like the issuance of an injunction, would unduly interfere with the collection of state taxes. Id. at 111, 102 S.Ct. at 184, 70 L.Ed.2d at 280. The Court focused on the possible interference in the administration of the state tax system. Thus, the federal courts may not award damages or grant either injunctive or declaratory relief when a state provides an adequate remedy.

An adequate state remedy need only satisfy "minimal procedural criteria." Rosewell v. LaSalle Nat'l Bank, 450 U.S. 503, 512, 101 S.Ct. 1221, 1228-29, 67 L.Ed.2d 464, 473 (1981). Generally, courts measure the adequacy of a state remedy by procedural, not substantive, criteria. Id. at 512, 101 S.Ct. at 1229, 67 L.Ed.2d at 473. Further, courts should narrowly construe any exception to the requirements of an adequate remedy. California v. Grace Brethren Church, 457 U.S. 393, 413, 102 S.Ct. 2498, 2510, 73 L.Ed.2d 93, 109 (1982).

Here, the assessment challenged is the valuation made in connection with an ad valorem real property tax administered by the City. It is the value that was used to determine the local property tax within the context of a City-wide revaluation. Where, as here, New Jersey's statutory tax appeals process

16

provided BCM with a speedy and efficient remedy, it may not now attempt to create a new remedy here.

BCM seeks a declaratory judgment that the tax lien certificate issued by the City for the nonpayment of 2006 taxes is "void and invalid" on the basis that the underlying tax was premised on an incorrect assessment. BCM seeks unspecified damages from Tyler arising from the assessment established by the Tax Assessor. For this Court to award the relief sought, it must, of necessity, review and set aside the municipal assessment of BCM's property, which it may not do where an efficient State Court remedy was available to BCM. As described in more detail above, New Jersey law provides several opportunities for taxpayers like BCM to raise objections to an assessment.

For example, a taxpayer may challenge the assessment by appealing to the Tax Court, pursuant to N.J.S.A. 54:3-21 et seq., before April 1 or 45 days from the date the bulk mailing is completed, whichever is later. Further, if the taxpayer remains dissatisfied, he may appeal from the Tax Court to the Appellate Division and if the taxpayer succeeds at any level, the taxing district must refund the excess taxes plus five-percent interest within sixty days of the final judgment. N.J.S.A. 54:3-27.2; see Rosewell, supra, 450 U.S. at 528, 101

S.Ct. at 1237, 67 L.Ed.2d at 483. Based on the Supreme Court's "minimal procedural criteria," Id. at 512, 101 S.Ct. at 1229, 67 L.Ed.2d at 473, the remedies under New Jersey law are adequate to preclude BCM's untimely complaint in federal.

Therefore, BCM's only remedy in such circumstance was to timely pursue the statutory tax appeal process with the Tax Court and having failed to properly do so, BCM has no remedy here. The jurisdictional defect of BCM's instant lawsuit cannot be overcome. Accordingly, the instant complaint must be dismissed for failure to state a claim upon which relief may be granted. F.R.C.P. 12(b)(6).

**D. BCM'S CLAIMS OF NEGLIGENCE AND PROFESSIONAL MALPRACTICE MUST BE DISMISSED BECAUSE TYLER OWED NO LEGAL DUTY TO BCM.**

BCM's negligence and professional malpractice claims cannot be sustained because Tyler owes no legal duty to BCM. After a public bidding process, the City awarded Tyler the contract to conduct a revaluation of all real property located within the City. As such, Tyler was contractually bound to perform in accordance with the terms of the specifications, the contract entered into between the parties, and statutory requirements for revaluation services. Tyler owed a duty to the City to satisfactorily perform such services. Tyler owed no duty of care to BCM or other property owners who were not parties to the

18

contract, and when its valuations were not binding on the City Assessor, whom it served, by law, only in an advisory capacity.

New Jersey has ruled on this precise issue and found that no duty exists between the revaluation company and the taxpayer. Specifically, in J.H. Becker, Inc., supra, the New Jersey Appellate Division held that the defendant revaluation company violated no duty to plaintiff because the company had been retained under contract by the township and its valuations were not binding on the township assessor, whom it served only in an advisory capacity. Id. at 530.

This determination is borne out by the statutory scheme. The terms and standards of Tyler's contract, as with any contract for revaluation services, was governed by N.J.A.C. 18:12-4.8 which provides that "the revaluation firm acts as the agent of the municipal tax assessor and all determinations made by the firm **shall be submitted to, and approved by, the municipal tax assessor."** (emphasis supplied). The ultimate responsibility to the assessment rests with the municipal tax assessor, who by law in New Jersey "shall have the duty of assessing property for the purpose of general taxation." N.J.S.A. 40A:9-148.1.

The Complaint concedes that BCM attempted to "reconcile this situation with the City of North Wildwood but was not

successful." (Complaint at ¶12). BCM has not named either North Wildwood or its tax assessor in this complaint. In BCM's tax appeal against North Wildwood, the Appellate Division, in upholding the dismissal of the Complaint, noted the role of both the tax assessor and Tyler in the revaluation process, stating:

> According to North Wildwood's tax assessor, 2006 was a "revaluation year" for North Wildwood. Therefore, North Wildwood employed the services of CLT/Tyler technologies to inspect and assess properties within the municipality. **The tax assessor would then review and prepare his own assessments to be mailed to taxpayers.** (Cannon Cert. Exh. A, page 1, emphasis supplied).

Here, as in J.H. Becker, Inc., supra, Tyler owed no duty or obligation to the Plaintiff where it was retained under a contract to the City to revalue properties in the City and its valuations were not binding on the City Assessor, whom it served in a purely advisory capacity.

Likewise, professional malpractice actions are grounded in the tort of negligence. See, Levine v. Wiss & Co., 97 N.J. 242, 246 (1984) (accounting malpractice); Gautam v. DeLuca, 215 N.J. Super. 388, 396 (App. Div. 1987) (legal malpractice). A claim for professional malpractice damages accrues when the professional's negligence is a breach of a duty owed and the proximate cause of the client's damages. See, e.g., Gautam, supra, 215 N.J. Super. at 397 ("[T]he claimant must show by a preponderance of the evidence what injuries he suffered as a

20

proximate consequence of the [professional's] breach of duty."). Although New Jersey law does impose a duty of care upon a professional in favor of persons who did not engage the professional, Carvalho v. Toll Bros. and Developers, 143 N.J. 565, 573-574 (1996), it only does so when the conduct is consistent with the scope of his or her undertaking. Zielinski v. Professional Appraisal Associates, 326 N.J. Super. 219, 225-226 (App. Div. 1999).

Generally, the determination of whether a duty exists is a matter of law for the court. Carvalho, supra, 143 N.J. at 572; S.P. v. Collier High School, 319 N.J. Super. 452, 467 (App. Div. 1999). The foreseeability of harm is a significant consideration in the determination of a duty to exercise reasonable care. Ibid. If the foreseeability of an injured party is established, considerations of fairness and policy then govern whether the imposition of a duty is warranted. Id. at 573.

Finally, the assessment of fairness and policy "involves identifying, weighing, and balancing several factors-the relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise care, and the public interest in the proposed solution." Ibid. New Jersey courts have applied the same foreseeability analysis to professional

malpractice claims. See, e.g., Sykes v. Propane Power Corp., 224 N.J. Super. 686 (App. Div. 1988); Grand Street Artists v. General Elec. Co., 19 F.Supp.2d 242 (D.N.J. 1998)

Here, BCM's complaint does not allege, nor can it allege, a legal duty that is owed from Tyler to BCM. No duty exists and therefore cannot serve as the basis of any claims of negligence and/or professional malpractice. Tyler's obligation was to advise the tax assessor and perform City-wide revaluation services. Tyler did not have any relationship with BCM or any other individual property owners. Its revaluation services were performed for the benefit of the City, and as found in J.H. Becker, supra, at 530, revaluation companies owe no duty to the taxpayer because they are retained under contract with the municipality and their valuations are not binding on the assessor whom they serve in an advisory capacity.

Further, Tyler could not have foreseen nor could it be responsible for BCM's unilateral decision not to pay its property taxes, whereupon a tax lien would be sold on the property, which would thereafter be subject to tax lien foreclosure by the lien holder. At most, it is foreseeable only that either the assessor will not agree with Tyler's recommendation or in the alternative that an aggrieved taxpayer will avail itself of the statutory appeal process to contest the

amount of the valuation.  In that context, Tyler's foreseeable duty is only to the City and is established by regulation, as follows:

> The firm shall assist by providing expert witnesses in the defense of all valuations rendered to the municipality which are appealed to the county tax board. The firm's obligations with respect to this requirement is limited to the initial appeal of an assessment filed during the year in which the revaluation is implemented or the following tax year. Such assistance shall include a qualified expert from the firm who is knowledgeable with regard to challenged assessments.
>
> <u>N.J.A.C.</u> 18:12-4.8.

Accordingly, it is foreseeable only that a taxpayer will file a tax appeal of its taxes.  Tyler is obliged to assist the City in the defense of such appeal.  If the taxpayer is correct, it will receive a revised valuation and taxes paid with five percent (5%) interest.

In this context, the relationship is between the assessor and the valuation company.  The assessor makes the final determination.  There is a statutory scheme in place which addresses the remedies of the taxpayer when they do not agree with the assessment.  The "harm" alleged here is that the taxpayer will not timely appeal and not pay its taxes.  This harm is not a foreseeable risk flowing from the valuation services nor can it be the responsibility of Tyler and the imposition of a duty is not warranted.  Simply, no duty can

arise under these circumstances, nor can such "harm" be the responsibility of the valuation company. Even if such harm were foreseeable, and we do not concede that it is, a balancing of fairness and public policy mandates that no duty be imposed where the taxpayer has a statutory scheme in place which makes it whole.

Based on the above, BCM's negligence and professional malpractice claims must be dismissed.

**E.    BCM'S CLAIM OF BREACH OF CONTRACT MUST BE DISMISSED BECAUSE BCM IS NOT A THIRD-PARTY BENEFICIARY TO TYLER'S CONTRACT WITH THE CITY OF NORTH WILDWOOD.**

As a matter of law, BCM is not entitled to relief for breach of contract because BCM is not a third-party beneficiary to the contract entered into between the City and Tyler for City-wide revaluation services. In New Jersey, the determination of the existence of a third-party beneficiary status focuses on whether the parties to the contract intended others to benefit from the existence of the contract, or whether the benefit merely arises as an unintended incident of the agreement. Broadway Maint. Corp. v. Rutgers, The State Univ., 90 N.J. 253, 259 (1982). Pursuant to N.J.S.A. 2A:15-2, the Legislature acknowledged the right of "[a] person for whose benefit a contract is made, either simple or sealed, [to] sue thereon in any court....", which confirmed the long recognized

legal remedy in New Jersey. See, e.g., Van Dyne v. Vreeland, 11 N.J.Eq. 370, 379 (Ch. 1857).

In Brooklawn v. Brooklawn Housing Corp., 124 N.J.L. 73 (E. & A. 1940), the Court of Errors and Appeals described the determining factors as to the rights of a third-party beneficiary as follows, in pertinent part:

> The determining factor as to the rights of a third party beneficiary is the intention of the parties who actually made the contract. They are the persons who agree upon the promises, the covenants, the guarantees; they are the persons who create the rights and obligations which flow from the contract.... Thus, the real test is whether the contracting parties intended that a third party should receive a benefit which might be enforced in the courts; and the fact that such a benefit exists, or that the third party is named, is merely evidence of this intention.
>
> Id. at 76-77.

It is clear New Jersey law contemplates that the contractual intent to recognize a right to performance in the third-party is paramount. Ibid. If such intent does not exist, the third-party has no contractual standing because that party is only an incidental beneficiary. Standard Gas Power Corp. v. New England Casualty Co., 90 N.J.L. 570, 573-74 (E. & A. 1917).

Here, the contract between Tyler and the City was for Tyler to perform City-wide revaluation services. The City was the sole beneficiary of the agreement. The terms of the contract are establshed by regulation and must be approved by the

Director of the Division of Taxation. <u>N.J.S.A</u>. 54:1-35.36. By regulation, no company "shall represent any property owner or taxpayer filing a tax appeal with respect to a revaluation by the firm." <u>N.J.A.C</u>. 18:12-4.5. Thus, by law, it is a conflict of interest for Tyler to represent the interests of any property owner or taxpayer because it is representing the interests of the City, and the interests of the City and the taxpayer or property owner are potentially adverse. A property owner or taxpayer has neither the right nor the ability by law to compel any performance or nonperformance under the Contract by Tyler as the City may in fact, ultimately be adverse to that property owner or taxpayer.

By law, there can be no actual or implied expression of intent for a right to performance in a third-party such as BCM. The revaluation services were being performed for the benefit of the City not for the benefit of individual taxpayers, who may potentially be adverse to the City as a result of the revaluation. As such, BCM and other similarly-situated taxpayers have no contractual standing to sue for breach of such contract. As demonstrated above, aggrieved taxpayers only have standing to sue pursuant to the New Jersey statutory tax appeals process.

Further, the Restatement (Second) of Contracts §313(2) provides a party who contracts with a government to perform a service for the public is not generally subject to contractual liability to a member of the public as follows:

> (2) In particular, a promisor who contracts with a government or governmental agency to do an act for or render a service to the public is not subject to contractual liability to a member of the public for consequential damages resulting from performance or failure to perform unless
>
> (a) the terms of the promise provide for such liability; or
>
> (b) the promisee is subject to liability to the member of the public for the damages and a direct action against the promisor is consistent with the terms of the contract and with the policy of the law authorizing the contract and prescribing remedies for its breach.

Here, there can be no expression of such liability given the existing statutory and regulatory scheme governing the establishment and appeal of the assessments and the City's and Tyler's respective roles in such process. The policy of law authorizing the contract is directly contrary to any finding of third party beneficiary status.

Government contracts like the revaluation services agreement here often benefit the public, but individual members of the public are treated as incidental beneficiaries unless a different intention is manifested. Restatement (Second) of Contracts, §313, Comment a.

27

New Jersey courts have applied the Restatement (Second) Contracts §313 analysis to government contract matters. See, e.g., Broadway, supra; Jama v. United States, I.N.S., 334 F.Supp.2d 662, 686 (D.N.J. 2004) (Detained undocumented aliens did not have right to sue as third-party beneficiaries of contract between detention center operator and INS because there were no contract provisions that expressed specifically any intent to confer a right to performance on any detainees.)

Nothing in BCM's complaint alleges any intention on the part of the City and Tyler to provide for such liability. BCM has pointed to no provisions of the City-Tyler contract that express specifically any intent to confer a right to performance on BCM. The contract requires Tyler to perform revaluation services only for the City. BCM cites to a term of the contract requiring Tyler to have direct communication with taxpayers. This provision is established by regulation, which provides that the firm shall provide the taxpayer with "an opportunity to review the proposed assessment of their property." N.J.A.C. 18:12-4.9. Here, as with all matters relating to the revaluation, the "revaluation firm acts as the agent of the municipal tax assessor and all determinations made by the firm shall be submitted to, and approved by, the municipal tax assessor." N.J.A.C. 18:12-4.8.

Thus, Tyler is required to meet with the taxpayer as the agent of the assessor and thereafter provide a written record of that taxpayer review to the assessor, who may then consent, in her discretion, to suggested revisions resulting from the review. However, an aggrieved taxpayer has no ability to compel any particular result from the review or the assessment process. The taxpayer's only recourse is a successful appeal to the Tax Court. The provision does not evidence any intention to confer contract rights upon BCM or any individual taxpayer or to have a direct cause of action for breach of contract against Tyler.

Further, there is no direct cause of action against Tyler otherwise. BCM's remedy is to pursue a tax appeal, not a claim against the revaluation company. BCM, by law, is not a third-party beneficiary entitled to bring the instant action against Tyler. Therefore, BCM's claims for breach of contract must be dismissed with prejudice.

**F.    BCM'S CLAIM OF UNJUST ENRICHMENT MUST BE DISMISSED BECAUSE THE CITY OF NORTH WILDWOOD PAID TYLER FOR THE REVALUATION SERVICES IT PERFORMED.**

BCM is not entitled to quasi-contract relief through the theory of unjust enrichment because BCM did not bestow any benefit on Tyler. "Under New Jersey law, '[t]he constructive or quasi-contract is the formula by which enforcement is had of a duty to prevent unjust enrichment or unconscionable benefit or

advantage.'" Suburban Transfer Serv., Inc. v. Beech Holdings, Inc., 716 F.2d 220, 226 (3d Cir.1983) (quoting Borough of West Caldwell v. Borough of Caldwell, 26 N.J. 9, 29 (1958)). "Quasi-contractual obligations are imposed by the law for the purpose of bringing about justice." Id.    Restitution for unjust enrichment is an equitable remedy, available only when there is no adequate remedy at law. National Amusements, Inc. v. New Jersey Tpk. Auth., 261 N.J. Super. 468, 478 (Law Div. 1992), aff'd, 275 N.J. Super. 134 (App. Div. 1994). Quasi-contract liability will not be imposed when a valid, unrescinded contract controls the parties' rights. Van Orman v. American Ins. Co., 680 F.2d 301, 310 (3d Cir.1982); see also, Suburban Transfer, supra, 716 F.2d at 226.

"To establish unjust enrichment, a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust." VRG Corp. v. GKN Realty Corp., 135 N.J. 539, 554 (1994). "The unjust enrichment doctrine requires that plaintiff show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights." Id.

Under the above principles, BCM's claim for quasi-contractual liability based on unjust enrichment must fail as a matter of law.  In this case, BCM does not purport to have given anything at all to Tyler.  In the absence of a benefit conferred, there can be no claim for unjust enrichment, and this count must be dismissed as a matter of law. VRG Corp., supra, 135 N.J. at 554.  Any taxes paid by BCM went to the City, not Tyler.[3]  Tyler received only its contracted price from the City and nothing from BCM.

The contract entered into between the City and Tyler is a valid, unrescinded contract which sets forth the relative rights and responsibilities of the parties.  Its terms are established by administrative regulation and it is approved by the Director of the Division of Taxation prior to being effective. N.J.S.A. 54:1-35.36.  The agreement sets out requirements for Tyler to perform revaluation services for the benefit of the City and the City's obligations to compensate Tyler.  The Complaint identifies no benefit that Tyler received to which it was not entitled by the terms of the Contract.

Thus the "'essential requirement of unjust enrichment of defendant does not appear.... [F]rom defendant's point of view,

---

[3]  In fact, even if the taxes paid were relevant and we do not believe they are, in this case, BCM has not paid any taxes, since they were paid by Royal in connection with its lien.

it cannot be said that it accepted a benefit which enriched it beyond its contractual right.   Therefore, there could be no recovery in quasi-contract.'" Van Orman, supra, 680 F.2d at 311 (quoting St. Paul Fire & Marine Insurance Co. v. Indemnity Insurance Co., 32 N.J. 17, 22 (1960)).

> **G.  BCM'S CLAIM OF BREACH OF IMPLIED COVENANT MUST BE DISMISSED BECAUSE NO CONTRACT WAS ENTERED INTO BETWEEN TYLER AND BCM.**

BCM is not entitled to any relief pursuant to the implied covenant of good faith and fair dealing because no contract existed between BCM and Tyler.   In New Jersey, every contract contains an implied covenant of good faith and fair dealing. Wilson v. Amerada Hess Corp., 168 N.J. 236, 244 (2001); Bak-A-Lum Corp. v. Alcoa Bldg. Prod., 69 N.J. 123, 129-130 (1976). "Thus, it is axiomatic that a contract must exist between two parties before a court will infer this covenant." J.M. ex rel. A.M. v. East Greenwich Tp. Bd. of Educ., No. 07-2861, 2008 WL 819968, at *9 (D.N.J. March 25, 2008) (citing Space v. BRPM Towing Service, Inc., No. 07-947, 2007 WL 4570157, at *6 (D.N.J.2007)) (Copies of these unreported opinions are attached to the Certification of Maeve E. Cannon).   Under such covenant, "'neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract[.]'" Bak-A-Lum, supra, 69 N.J. at 129

(quoting Ass'n Group Life, Inc. v. Catholic War Vets. of U.S., 61 N.J. 150, 153 (1972)).

A breach of the implied covenant of good faith and fair dealing differs from a "literal violation of a contract[.]" Bak-A-Lum Co., supra, 69 N.J. at 130.  "Although the implied covenant of good faith and fair dealing cannot override an express term in a contract, a party's performance under a contract may breach that implied covenant even though that performance does not violate a pertinent express term." Wilson, supra, 168 N.J. at 244 (citing Sons of Thunder, Inc. v. Borden, 148 N.J. 396, 419 (1997)).  The New Jersey Supreme Court has cautioned, however, that "an allegation of bad faith or unfair dealing should not be permitted to be advanced in the abstract and absent an improper motive." Id. at 251.

Further, to the extent BCM contends that a breach of the implied covenant may arise absent an express or implied contract, that argument finds no support in New Jersey case law. Wade v. Kessler Institute, 343 N.J. Super. 338 (App. Div. 2001); Noye v. Hoffmann-La Roche Inc., 238 N.J. Super. 430, 434 (App. Div.), certif. denied, 122 N.J. 146 (1990).  "An implied contract must be found before the jury could find that the implied covenant of good faith and fair dealing had been breached." Wade, supra, 343 N.J. Super. at 351; Noye, supra, 238

N.J. Super. at 434 ("In the absence of a contract, there can be no breach of an implied covenant of good faith and fair dealing.").

Here, BCM has not entered into a contract with Tyler. BCM appears to assert that a contract exists between it and Tyler because Tyler performed revaluation services for the City which included a recommended assessment value for BCM's property. This tenuous connection does not constitute a contract between BCM and Tyler. In fact, it would be a conflict of interest, by regulation, for Tyler to represent either a property owner or a taxpayer in the City in connection with a tax appeal with respect to a revaluation by the firm. N.J.A.C. 18:12-4.5.

Consequently, because there is no contract between BCM and Tyler, the duty of good faith and fair dealing does not apply. Further, the complaint is devoid of any allegations of bad faith, unfair dealing or improper motive. New Jersey law does not permit claims of breach of the covenant to be advanced in the abstract as here. Wilson, supra, at 251. Thus, because plaintiff's complaint cannot include an implied covenant claim absent an agreement between BCM and Tyler, this count must be dismissed with prejudice.

34

## <u>CONCLUSION</u>

For all the foregoing reasons, Tyler respectfully requests this court dismiss plaintiff's complaint in its entirety with prejudice for failure to state a claim upon which relief can be granted.

Respectfully submitted,

HILL WALLACK LLP
Attorneys for Defendants,
Cole Layer Trumble Company
and Tyler Technologies Inc.

Dated: July 24, 2009          By: /s/ Maeve E. Cannon

HILL WALLACK LLP
Maeve E. Cannon (MC0574)
202 Carnegie Center CN 5226
Princeton, New Jersey 08543
(609) 734-6320
FAX: (609) 452-1888
mec@hillwallack.com