## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

BEACH CREEK MARINA, INC.

        Plaintiffs,

        v.

ROYAL TAX LIEN SERVICES, LLC
  d/b/a CRUSADER LIEN SERVICES,
COLE LAYER TRUMBLE COMPANY,
And TYLER TECHNOLOGIES INC.,

        Defendants.

**CIVIL ACTION NO. 2:09-cv-2649**

---

## PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS'
## MOTIONS TO DISMISS THE COMPLAINT

---

**RTN (8517)**
**RONALD T. NAGLE, P.C.**
52 South Street
Morristown, New Jersey 07960
Telephone: (973) 267-6780
Facsimile: (973) 267-6738
Attorney for Plaintiff Beach Creek, Inc.

## TABLE OF CONTENTS

PRELIMINARY STATEMENT.................................................................................1

STATEMENT OF FACTS...................................................................................2

LEGAL ARGUMENT......................................................................................3

I.  NO BASIS EXISTS TO DISMISS THE COMPLANT.........................................3

    A.  This Is Not a Tax Appeal...................................................................4

    B.  The New Jersey Tax Court Is a Court of Very Limited Jurisdiction...................6

    C.  This Action Is Entirely Proper.............................................................7

    D.  The Tax Injunction Act Has No Application Here.......................................8

    E.  Beach Creek Can Maintain Its Claims Against Defendants.............................9

II.  CRUSADER'S MOTION IS LIKEWISE DEVOID OF MERIT..............................19

III.  CRUSADER'S PROCEDURAL ARGUMENTS ARE LIKEWISE DEFECTIVE..........20

    A.  Crusader May Join North Wildwood If It Wants To.....................................21

    B.  Res Judicata And Collateral Estoppel Simply Do Not Apply Here....................22

    C.  The Matter Should Not Be Transferred..................................................23

IV.  BEACH CREEK HAS BEEN AND CONTINUES TO BE HARMED.......................25

CONCLUSION.........................................................................................26

## TABLE OF AUTHORITIES

### CASES

Acevado v.  Monsignor Donovan High School,
420 F. Supp. 2d. 337 (U.S.D.J. 2006)..................................................................3

Albert & Maguire Securities Co., Inc.,
70 F.R.D. 361, 363 (E.D.Pa. 1976) ...................................................................22

Anderson v. Liberty Lobby, Inc.,
411 U.S. 242, 247-48 (1986)..........................................................................4, 19

Brinkley v. Western World, Inc.,
275 N.J. Super. 605, 609-611 (Ch. Div. 1994),
aff'd o.b., 292 N.J. Super. 134, 136 (App. Div. 1996) ...........................................7

Broadway Maintenance Corp. v. Rutgers,
90 N.J. 253 (1982) ......................................................................................13

Brooklawn v. Brooklawn Housing Corp.,
124 N.J.L. 73 (E&A 1940) ............................................................................13

Burlington Coat Factory Sec. Litig.,
114 F. 3d. 1410, 1426 (3d. Cir. 1997) ..............................................................3

Carter Lincoln-Mercury, Inc., Leasing Div. v. EMAR Group, Inc.,
135 N.J. 182, 196-197 (1994) .........................................................................14

Carvalho v. Toll Brothers and Developers,
143 N.J. 565, 572, 675 A.2d 209 (1996) .....................................................10, 11

Celotex Corp v. Catrett,
477 U.S. 317, 327 (1986) ...........................................................................3, 4

Consult Urban Review Development Corp. v. T.R. Arnold & Assoc., Inc.,
CV No. 06-1684 (WJM) ................................................................................18

Doe v. Delie,
257 F. 3d. 309, 313 (3d. Cir. 2001) ..................................................................3

Dunphy v. Gregor,
136 N.J. 99, 110 (1994) ................................................................................10

Dynalectric Co. v. Westinghouse Elec. Corp.,
803 F.Supp. 985, 990 (D.N.J. 1992) ................................................................14

Frankel v. Alan Wood Steel Co.,
201 F.Supp. 203 (E.D.Pa. 1962) ............................................................................22

Federated Dep't Stores v. Moite,
452 U.S. 394, 398 (1981) ......................................................................................22

General Motors Corp. v. Linden,
143 N.J. 336 (1996) ...............................................................................................9

Gulf Oil v. Gilbert,
330 U.S. 501........................................................................................................24

Grand Street Artists,
19 F. Supp. 2d 242, 247 (D.N.J. 1998) ..............................................................10, 11

Goodman v. Mead Johnson & Co.,
534 F.2d 566, 573 (3d Cir. 1976) .............................................................................4

H. Rosenblum v. Adler,
93 N.J. 324 (1983) ...............................................................................................12

Hudson Co. Park Comm. v. Jacobson,
132 N.J.L. 287, 289 (Sup. Ct. 1944) .........................................................................7

Jakomas v. McFalls,
229 F. Supp. 2d. 412, 419 (W.D. Pa 2002) .................................................................3

J.H. Becker v. Twp of Marlboro,
82 N.J. Super 519 (App. Div. 1964).......................................................................9, 10

Kremer v. Chemical Construction Corp.,
456 U.S. 461 (1982) .............................................................................................22

Lacey v. Cessna Aircraft Co.,
862 F.2d 38, 44 (3d. Cir. 1988) ..............................................................................24

Lony v. E.I. DuPont de Nemours & Co.,
886 F.2d 628, 633 (3d. Cir. 1989) ......................................................................23, 24

Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,
475 U.S. 574, 587 (1986) ........................................................................................4

McMahon v. City of Newark,
195 N.J. 526 (2008) ...............................................................................................6

Moriah v. Cole Layer Trumble Company,
200 A.D. 2d 879, 606 N.Y.S. 2d 822 (1994) .................................................................18

Nautilus Motor Tanker Co., Ltd.,
900 F.Supp. 697 (D.N.J. Sep 28, 1995) .....................................................................14

Nordell v. Mantia Twp.,
45 N.J. Super. 253, 256 (Ch. Div. 1951) .............................................................7, 19, 20

Petrillo v. Bachenberg,
139 N.J. 472 (1995) ......................................................................................10

People Express Airlines v. Consolidated Rail,
100 N.J. 246 (1985) ..................................................................................12, 14

Pickett v. Lloyd's,
131 N.J. 457 (1993) ......................................................................................14

Saltiel v. GSI Consultants, Inc.,
170 N.J. 297, 311 (2002)..................................................................................12

Smith v. Philadelphia Transp. Co.,
173 F.2d 721, 724 n. 2 (3d Cir. 1949) .....................................................................21

Snyder v. American Associates of Blood Banks,
144 N.J. 269, 292, 676 A.2d 1036 (1996) ...................................................................11

Spring City Corp. v. American Bldgs. Co.,
193 F.3d 165, 169 (3d Cir. 1999) .........................................................................21

Union City Assocs. V. Union City,
115 N.J. 17, 23 (1989) ....................................................................................6

Varsolona v. Breen Capital Services Corp.,
180 N.J. 605, 616-622 (2004) ..............................................................................7

Watkins v. Resorts International,
124 N.J. 388 (1991) ......................................................................................22

Weinberg v. Dinger,
106 N.J. 469, 485, 524 A.2d 366 (1987) ...................................................................11

## STATUTES

N.J.S.A. 2A:14-1.............................................................................................5

N.J.S.A. 54:3-21..........................................................................................4, 5

N.J.S.A. 54:5-52.............................................................................................2

N.J.S.A. 54:4-63.11.........................................................................................6

N.J.S.A. 54:5-100.............................................................................5, 7, 8, 19, 21

## RULES

Fed. R. Civ. P. 12(b)(6) .............................................................................1, 3 , 5

Fed. R. Civ. P. 14............................................................................................21

Fed. R. Civ. P. 56 ...........................................................................................4

## OTHER AUTHORITIES

Michael G. Pellegrino, Esq., and Ralph P. Allocca, Esq., Article on New Jersey Law: Tax Certificates: A Review of the Tax Sale Law, 26 Seton Hall Law Review 1607, 1628 (1996).......19

## PRELIMINARY STATEMENT

Plaintiff Beach Creek Marina, Inc. ("Beach Creek") submits this brief in opposition to the motions by Defendants Cole Layer Trumble Company and Tyler Technologies, Inc. ("Cole Layer") and Royal Tax Lien Services, LLC d/b/a Crusader Lien Services ("Crusader") to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth herein, neither motion has merit, both are in reality summary judgment motions and both should be denied.

Defendants claim that their motions are Rule 12(b)(6) motions. This is hardly the case. Both motions are for summary judgment to dismiss the Complaint with prejudice. Both motions rely upon materials that are not contained in the complaint. Both motions have been made without any discovery having been undertaken. Both motions are extremely premature and both should be denied on this basis alone.

Moreover, both motions are entirely misplaced. Defendants confusingly argue at length about a tax appeal. What is clear, however, is that this is not a tax appeal. Beach Creek is not suing a municipal entity in this matter. Tax law and tax appeals have nothing to do with this case. This is a distinct case in which Beach Creek is asserting separate common law claims against corporate entities that exist entirely apart from any municipality.

Defendants' lengthy arguments as to Federal law and the Tax Injunction Act are interesting but have absolutely no bearing on this case. This case is about common law causes of action that are well settled and are before this Court by virtue of the diversity of the parties. This simple fact is seemingly lost on Defendants in their submissions to this Court.

Beach Creek has asserted bona fide claims against both Defendants that are supported by New Jersey statutes and case law. Beach Creek is entitled to pursue those claims here without

1

regard to any tax appeal that may be taken as to a municipality. Thus, both motions should be denied.

## STATEMENT OF FACTS

In or about May 2003, Tyler was engaged to perform real estate appraisals and assessments for properties in North Wildwood, New Jersey for tax assessment purposes.[1] Toward this end, North Wildwood and Tyler entered into a Contract (the "Contract") for Tyler to provide assessment and appraisal services.

Tyler performed an assessment and appraisal of property owned by Beach Creek. The net result of the appraisal performed by Tyler was that in 2006 Beach Creek's property went from a 2005 assessment of $1,526,200 to an assessment of $14,612,900.

As a result of this appraisal process, BCM's property taxes were increased approximately 274% in one year (i.e., from $39,000± to $107,000± annually), thus undermining the viability of Beach Creek's business and property ownership after 20 years of continuous operations.

Beach Creek attempted to reconcile this situation with the City of North Wildwood but was not successful. The City of North Wildwood's property tax and worksheet documents relied upon in making the significantly increased assessment were created and developed by Cole Layer.

The City then issued a tax lien certificate in connection with Beach Creek's property in and around January 11, 2007. The certificate was purchased by Crusader. The two (2) year statutory period under N.J.S.A. 54:5-52 has expired after which a tax lien certificate holder may foreclose. Crusader has advised in writing that it intends to foreclose on the certificate.

---

[1] These facts are taken from the Complaint and documents submitted by the parties in their motion papers.

2

## LEGAL ARGUMENT

### I.    NO BASIS TO DISMISS THE COMPLAINT EXISTS

On a motion to dismiss a complaint under Fed. R. Civ. P. 12(b)(6), the Court must accept as true all of the facts asserted in the complaint and draw all reasonable inferences in favor of the Plaintiff. Doe v. Delie, 257 F. 3d. 309, 313 (3d. Cir. 2001). "Dismissal of claims under R. 12(b)(6) is appropriate only if it appears beyond a doubt that the Plaintiff can prove no set of facts in support of its claim upon which relief can be granted." Jakomas v. McFalls, 229 F. Supp. 2d. 412, 419 (W.D. Pa 2002).

When considering a motion to dismiss, the Court may generally not consider matters extraneous to the pleadings. In Re Burlington Coat Factory Sec. Litig., 114 F. 3d. 1410, 1426 (3d. Cir. 1997). However, if a party submits matters outside the pleadings, the Court must (1) convert the motion to dismiss in to one for summary judgment and (2) allow the parties a reasonable opportunity to present all material pertinent to such motion. Acevado v. Monsignor Donovan High School, 420 F. Supp. 2d. 337 (U.S.D.J. 2006).

Here, Defendants rely upon documents and facts that are clearly outside of the pleadings. Defendants have submitted certifications with Exhibits that are not attached to the Complaint nor are they referred to in the Complaint. The Certification of Crusader's counsel has attached to it many documents that are clearly outside of the pleadings. Likewise, for a proper resolution of this matter, Beach Creek has submitted records and a certification that are also outside of the pleadings. As such, the motions are properly converted to motions for summary judgment.

Summary Judgment serves to eliminate unfound claims without resorting to a costly and lengthy trial. Celotex Corp v. Catrett, 477 U.S. 317, 327 (1986). However, a court should grant summary judgment only "if the pleadings, depositions, answers to interrogatories, and

3

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The burden of showing that no genuine issue of material fact exists rests initially on the moving party. Celotex, 477 U.S. at 323. A litigant discharges this burden by demonstrating "the absence of evidence to support the nonmoving party's case." Id. at 325.

In evaluating a summary judgment motion, a court must view all evidence in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir. 1976). Once a moving party has made a properly supported motion for summary judgment, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); Anderson v. Liberty Lobby, Inc., 411 U.S. 242, 247-48 (1986). The substantive law determines which facts are material. Id. at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. An issue for trial remains if the nonmoving party can demonstrate sufficient evidence favoring it such that a reasonable jury could return a verdict in that party's favor. Id. at 249.

As explained further below, there are clear issues of fact that can not be resolved at this time. For this reason alone, the motions should be denied and the parties should be allowed to proceed with discovery.

A.    **This Is Not A Tax Appeal**

Defendants' assertion that this matter is somehow time barred is a glaring mix of apples and oranges. The argument advanced by Defendants is that this case against them is barred by NJSA 54:3-21 as it is an untimely tax appeal. No matter what dressing Defendants try to put on

4

this case, one thing is clear - - it is not a tax appeal. The municipality is not a defendant. This is not a tax court. Breach Creek is asserting perfectly permissible common law claims against the Defendants to this matter.

Significantly, Defendants have not cited one case to support the notion that the tax court would have exclusive jurisdiction over the claims asserted by Breach Creek here. Yet, under Defendants' hypothesis, Beach Creek would have had to bring its claims in the tax court within forty five days of notice of the final assessment.[2] This position is utter nonsense. There is simply no case law or statute to support this position. The case involves issues distinct and separate from the claims asserted in Tax Court against the municipality. Further, Beach Creek's claims are against entities distinct and separate from the municipality. N.J.S.A. 54: 3-21 et. seq. by its plain terms only applies to tax appeals against a municipality. It does not apply - - directly or by implication - - to common law claims that are not directed against the municipality.[3]

In fact, the common law claims asserted by Beach Creek all have their own separate statutory limitation periods. The New Jersey Legislature has expressly enacted such statutes of limitation to govern common law claims like those asserted by Beach Creek here. For example, N.J.S.A. 2A:14-1 provides a six year statute of limitations for breach of contract claims. Defendants' argument, if accepted, would have those statutes of limitation overridden by N.J.S.A. 54:3-21. Once again, there is simply no legal support for this theory. This is simply a lawyer made argument. That is not a basis upon which to grant a R. 12(b)(6) motion. Unless and until the New Jersey Legislature acts, the causes of action asserted by Beach Creek are not subject to the limitation period set forth in N.J.S.A. 54:3-21 et. seq.

---

[2] This would mean that the claims against these defendants would have to have been filed on or before January 16, 2007, which expressly contradicts N.J.S.A. 54:5-100, under whose authority the intant claims are asserted.

[3] Defendants' arguments if accepted, would mean that Beach Creek would have no forum anywhere to bring its claims. Under the Defendants' logic, they would commit any tort and not be held accountable.

B.    **The New Jersey Tax Court Is a Court of Very Limited Jurisdiction**

It is well settled, and New Jersey Supreme Court has often repeated, that the Tax Court is a court vested with limited jurisdication. McMahon v. City of Newark, 195 N.J. 526 (2008); Union City Assocs. V. Union City, 115 N.J. 17, 23 (1989). The legislative charge for the Tax Court is to hear tax appeals against a municipality. N.J.S.A. 2B:13-1 et seq. McMahon instructs directly on this point. In McMahon, the New Jersey Supreme Court shot down the same argument advanced by defendants here. In that case, the Plaintiff real property owner filed an action in the Law Division against the City of Newark based on breach of contract and estoppel theories. The City defended the action by arguing that it was really a tax appeal case and that Plaintiff was out of time to challenge the assessment under N.J.S.A. 54:4-63.11. The Supreme Court flatly rejected this argument. It found that the Plaintiff's claims were for breach of contract and other common law causes of action and therefore were not proper for the Tax Court. The Court held that N.J.S.A. 54:4-63.11 had no application to time bar the Plaintiff's claims and that the matter could proceed against the municipality in the Law Division.

Significantly, the Court in McMahon allowed the common law claims of the property owner to proceed against the actual municipality. Thus, McMahon has an even stronger application here as Beach Creek's claims are asserted against Cole Layer and Crusader and not the municipality. Cole Layer and Crusader have no basis, as separate non-municipal entities, to even rely upon the tax appeal statute. Cole Layer and Crusader have no basis to even claim that this matter could be brought in the Tax Court as the Tax Court would not even have jurisdiction over these claims. Simply put, this matter clearly does not belong in the Tax Court.

6

## C.    **This Action Is Entirely Proper**

Defendants' motions are both premised on the argument that Beach Creek can not maintain this action as the tax appeal statute of limitations ran as to an appeal against the municipality. While this argument is fundamentally wrong on the several levels set forth herein, it is directly contradicted by N.J.S.A. 54:5-100, a statute enacted by the New Jersey Legislature. This statute expressly permits a property owner to challenge the validity of a tax certificate or other municipal lien in an action in Court. Id. The purpose behind the statute is based on the rule that Courts can not give effect to an invalid assessment. Brinkley v. Western World, Inc., 275 N.J. Super. (Ch. Div. 1994), aff'd o.b. 292 N.J. Super. 134 (App. Div. 1996).

N.J.S.A. 54:5-100 directly contradicts Defendants' argument that once the period for the tax appeal passes, the tax assessment can not be challenged. Under this statute, a tax lien can be challenged as to its invalidity at any time. To the extent the tax lien resulted from an improper assessment, the invalidity of the lien under N.J.S.A. 54:5-100 can be established by the property owner. Also, a tax sale certificate is simply an instrument which evidences a step in liquidating the statutory lien for taxes into cash. See N.J.S.A. 54:5-46, et. seq. See also Varsolona v. Breen Capital Services Corp., 180 N.J. 605, 616-622 (2004). It is not the same as the taxes themselves, and it can neither validate an erroneous assessment of taxes nor create an obligation for taxes not otherwise due. See Hudson Co. Park Comm. v. Jacobson, 132 N.J.L. 287, 289 (Sup. Ct. 1944); Brinkley v. Western World, Inc., 275 N.J. Super. 605, 609-611 (Ch. Div. 1994), aff'd o.b., 292 N.J. Super. 134, 136 (App. Div. 1996); Nordell v. Twp. of Montia, 45 N.J. Super. 253, 258 (Ch. Div. 1957). In this case, Beach Creek is fully within its rights to assert that the tax assessment done by Cole Layer on its property was improper and that the resultant tax lien sold to Crusader was improper.

Defendants' argument, if extended out logically, would strike N.J.S.A. 54:5-100 from the New Jersey statutes. For example, under Defendants' faulty reasoning, if the municipality issued notice of a final assessment, Beach Creek would have forty five days to file a claim against Cole Layer and Crusader. Presumably, Defendants would argue that despite the clear limited jurisdiction of the Tax Court, such a suit would have to be filed in the Tax Court. This reasoning falls apart if the municipality sells a tax lien certificate after the time to appeal the assessment passes. Under Defendants reasoning, the real property owner could not challenge whether an assessment is a product of error or fraud, or the validity of the lien certificate there upon issued or sold once such error or fraud occurs. While this argument may be nice for the Defendants, it ignores reality and the law. N.J.S.A. 54:5-100 specifically allows a property owner to challenge a lien made on an invalid assessment. N.J.S.A. 54:5-100 specifically - - and must by necessity - - allow a challenge to a tax assessment outside of the tax appeal statute of limitations appeal time frame. Thus, the tax appeal statute of limitations has no application to this suit.

## D.    The Tax Injunction Act Has No Application Here

Defendants' reliance on 28 U.S.C. § 1341 is again misplaced. Defendants attempt a tortured and way overbroad reading of this statute in an effort to apply it to this case. Such statute has no application whatsoever. By its plain terms the statute restricts and District Court from acting to restrain an assessment, levy or collection of tax under state law. This is not an action to restrain an assessment, levy or collection of a tax under state law. The assessment and levy have already been made. No restraints against these acts are sought here. By its plain terms, 18 U.S.C. § 1341 simply does not apply to this matter.

8

General Motors Corp. v. Linden, 143 N.J. 336 (1996), also offers no support for Defendants argument. That case only dealt with the narrow issue of whether a §1983 action would be brought against a municipality to challenge the constitutionality of a tax assessment. The claim was directed against the municipality based on an alleged violation of due process rights. The Court decided that the Plaintiff would not maintain a §1983 claim under Federal Law. A review of the case makes clear that the Court's holding applied only to §1983 claims asserted against the municipality. Beach Creek is not asserting a §1983 claim or any other civil rights claim here. Independent and well settled common law claims are being asserted against entities that are distinct and apart from the municipality.

## E.    Beach Creek Can Maintain Its Claims Against Defendants

Beach Creek has asserted claims against Defendant Cole Layer for negligence, breach of contract, unjust enrichment and breach of implied covenant. All of these are well settled common law claims. Cole Layer's position, if extended out logically, is that it could completely fail to perform its assessment under the contract, applicable statutes, applicable industry standards and under applicable regulations and have no responsibility for any such conduct to real property owners in the municipality. Simply put, this is absurd. Based on the conduct of Cole Layer, as outlined below, Cole Layer caused Beach Creek's property to go from a one and a half million dollar assessment to a fourteen and a half million dollar assessment.[4] Such conduct was clearly negligent and in breach of contract.

Cole Layer's reliance on J.H. Becker v. Twp of Marlboro, 82 N.J. Super 519 (App. Div. 1964), is misguided. That case dealt with an action in lieu of prerogative writs brought by a property owner against the Township of Marlboro to compel changes to tax assessments. The

---

[4] No discovery has been taken in this matter. Through an OPRA request, Beach Creek has obtained certain records. From those records and anticipated discovery, Beach Creek believes that Cole Layer's gross negligence and gross breach of contract will be established.

entire decision by the Court dealt with whether the plaintiff property owner had exhausted his administrative remedies as against the municipality. The ultimate decision by the Court was that the Plaintiff had not exhausted his administrative remedies as against the municipality. The entire opinion, except four sentences of essentially dicta at the end, dealt with the issue of exhaustion of administrative remedies as against the municipality. In the last four sentences, the Court, without analysis, dismissed a claim by the plaintiff against the appraiser. Without any rationale as to the basis for the dismissal, J.H. Becker stands for nothing. Decided in 1964, well before the cases set forth below, J.H. Becker offers no guidance to this Court.

Put simply, Cole Layer's argument that it did not owe a duty to Beach Creek is simply not the law. The question of whether a duty exists to avoid the risk of harm to others is one of fairness and policy that implicates many factors. Dunphy v. Gregor, 136 N.J. 99, 110 (1994). The foreseeability of harm is the most significant consideration in the determination of a duty to exercise reasonable care. Carvalho v. Toll Brothers, 143 N.J. 565 (1996). The Court then looks to consideration of fairness and policy as to whether a duty exists. Id.

In Grand Street Artists, 19 F. Supp. 2d 242, 247 (D.N.J. 1998), the issue was whether an environmental consultant owed a duty to land purchasers who had relied on reviews of Environmental Cleanup Responsibility Act ("ECRA") submissions performed by the defendant for another party in making the decision whether to purchase. Even though the plaintiff was not a party to the contract enlisting the consultant's services, the district court nonetheless found the defendant liable to the purchaser, basing its conclusion on New Jersey case law dealing with duties owed by professionals to third parties. Id. at 248 (citing Petrillo v. Bachenberg, 139 N.J. 472 (1995)).

The court stated:

> In New Jersey, the existence of a duty in a "matter of law properly
> decided by the court." See Carvalho v. Toll Brothers and
> Developers, 143 N.J. 565, 572, 675 A.2d 209 (1996). Ultimately,
> the "question of whether a duty exists in a particular case is a
> question of fairness and policy that implicates many factors." Id.;
> See Snyder v. American Associates of Blood Banks, 144 N.J. 269,
> 292, 676 A.2d 1036 (1996).    Among these factors, the
> foreseeability of injury to others from defendant's conduct is the
> most important. See Carvalho, supra. The "foreseeability" factor
> does not, by itself establish the existence of a duty, but it is a
> "crucial element in determining whether imposition of duty… is
> appropriate." See Id. at 573, 675 A.2d 209.    "Once the
> foreseeability of an injured party is established… consideration of
> fairness and policy govern whether the imposition of a duty is
> warranted." Id. At this stage, the court must identify, weigh and
> balance several factors which include: "the relationship of the
> parties, the nature of the attendant risk, the opportunity and ability
> to exercise care, and the public interest in the proposed solution."
> Id. While there is a connection between the concept of
> foreseeability and the other factors, the "foreseeability of harm is
> susceptible to an objective analysis, while the resolution of fairness
> and policy is a much less certain determination." Id. The
> magnitude and likelihood of potential harm are objectively
> determinable, but the propriety of imposing a duty of care is not.
> See Weinberg v. Dinger, 106 N.J. 469, 485, 524 A.2d 366 (1987).

In holding that duty existed, the court focused on the "objective purpose" of the consultant's services and held it was foreseeable that a prospective purchaser would examine the results of a previous ECRA submission and that the consultant was retained for the purpose of obtaining ECRA approval. Id. at 249-51. The court further emphasized the fact that "the public has an interest in the proper compliance with ECRA to protect it against hazardous waste." Id. at 252.

As in Grand Street Artists, it was clear here that the "objective purpose" of the assessment services provided by Cole Layer was to set values for the real property in the municipality, upon which individual property owners could rely on in making fair payments for their real estate tax obligations. Moreover, as in Grand Street Artists, the nature of the service

11

Cole Layer provides is of extreme public importance, because Cole Layer in reality discharges the role of a government tax department. Thus, the body of case law that is better suited to this dispute is that which covers the duty owed by professionals to unrelated third parties who rely on the professional's services. Saltiel v. GSI Consultants, Inc., 170 N.J. 297, 311 (2002).

People Express Airlines v. Consolidated Rail, 100 N.J. 246 (1985), provides further support for Beach Creek's claims. In that case, the New Jersey Supreme Court held that a plaintiff would bring an action for purely economic losses, regardless of any physical or property damage, if the plaintiff was a member of an identifiable class that the defendant should have reasonably foreseen was likely to be injured by the defendant's conduct. The Court found it particularly appropriate to impose a duty on a tort feasor that, by virtue of its activities, training, or preparation for its work, had particular knowledge or reason to know that others would be harmed by its negligent conduct. Id. at 258. "The more particular is the foreseeability that economic loss will be recovered by the plaintiff as a result of defendants negligence, the more proper is it that liability be imposed and recovery allowed." Id. at 263.

H. Rosenblum v. Adler, 93 N.J. 324 (1983), is particularly instructive as to this matter. In that case, the Plaintiff company hired an auditor to review its books and records. The shareholders of the company sued the auditor for negligent misrepresentation. The Court ruled that the shareholders of the company, even though not in privity with the auditor, could nevertheless sue the auditor as the auditor had a duty - - based on foreseeability - - to the shareholders not to make negligent misrepresentations regarding the company.

Here, the real property owners of the municipality are no different from the shareholders in Adler. Indeed, it is even more foreseeable that the negligence and breach of contract by Cole Layer would impact and cause injury to those real property owners. Clearly, Cole Layer had a

12

duty to those real property owners - - like Beach Creek - - to perform its assessment in the proper way. That duty is established based on the foreseeability of harm to the real property owners in the municipality if Cole Layer was negligent. That duty is also established based on principles of fairness on policy. Clearly Cole Layer was trained for its work and had particular knowledge as to its work. Cole Layer is presumably possessed with expertise as to assessments. Beyond any doubt these considerations create a duty by Cole Layer to the identifiable class - - real property owners in the municipality - - that Cole Layer knew it could harm by its negligence. It breached that duty and Beach Creek was harmed.

The issue of foreseeability also factors in to the third party beneficiary claim of Beach Creek. "The determining factor as to the rights of a third party beneficiary is the intention of the parties who actually made the contract. They are the persons who agree upon the promises, the covenants, the guarantees; they are the persons who create the rights and obligations which flow from the contract. Thus, the real test is whether the contracting parties intended that a third party should receive a benefit which might be enforced in the Court." Broadway Maintenance Corp. v. Rutgers, 90 N.J. 253 (1982), quoting Brooklawn v. Brooklawn Housing Corp., 124 N.J.L. 73 (E&A 1940). In this regard, the contractual intent to recognize a right to performance in the third person is key. Id. As to the issue of intent, if the contract is silent, it is necessary to examine the pertinent provisions in the agreement and the surrounding circumstances to ascertain that intent. Id. [5]

The cases in this area make clear the principle "that wronged persons should be compensated for their injuries and that those responsible for the wrong should bear the cost of their tortious conduct." Id. at 255. The New Jersey Supreme Court has, therefore, concluded:

---

[5] Again, the issue of intent is a factual issue. No discovery has been undertaken as to that issue.

13

> [T]hat a defendant who has breached his duty of care to avoid the risk of economic injury to particularly foreseeable plaintiffs may be held liable for actual economic losses that are proximately caused by its breach of duty.  In this context, those economic losses are recoverable as damages when they are the natural and probable consequence of a defendant's negligence in the sense that they are reasonably to be anticipated in view of defendant's capacity to have foreseen that the particular plaintiff or identifiable class of plaintiffs is demonstrably within the risk created by defendant's negligence.[6]

Id. at 266. Plaintiffs that may recover under this standard "must be particularly foreseeable in terms of the type of persons or entities comprising the class, the certainty or predictability of their presence, the approximate numbers of those in the class, as well as the type of economic expectations disrupted."  Id. at 264.  Privity between parties is not a condition for the application of this rule.  See Carter Lincoln-Mercury, Inc., Leasing Div. v. EMAR Group, Inc., 135 N.J. 182, 196-197 (1994); See also Dynalectric Co. v. Westinghouse Elec. Corp., 803 F.Supp. 985, 990 (D.N.J. 1992).

Here, the contract issue is exhaustive and clearly supports Beach Creek as an intended third party beneficiary.[7]  Cole Layer's breach of that contract go hand in hand with Beach Creek's status as a third party beneficiary.  What follows is a breakdown of the pertinent contract sections.

---

[6]  For analogous cases see: Nautilus Motor Tanker Co., Ltd., 900 F.Supp. 697 (D.N.J. Sep 28, 1995) (Berth operator entitled to recover business losses involved with extended docking of oil tanker); see also Pickett v. Lloyd's,131 N.J. 457 (1993) (Economic losses suffered as a result of insurance company's extended refusal to process insured's claim are recoverable); see also Carter Lincoln-Mercury, Inc., Leasing Div. v. EMAR Group, Inc., 135 N.J. 182 (1994) (Insurance broker liable for economic losses incurred by loss-payees under insurance policy for broker's failure to use reasonable care in evaluating financial health of insurance company, which later became insolvent.)  In fact, the New Jersey Supreme Court determined that the law in this area should be developed on a case by case basis. People Express at 267.

[7]  The Contract is attached as Exhibit B to the Certification of Theodore J. Lamicella ("Lamicella Cert.").

- Property Record Cards. The contract and N.J.A.C. 18:12-4.8 require the Property record cards to include values of each lot and building, its age, condition, depreciation, obsolensure, additions deletions, appraised value, recent sales prices, and rental data. The property records cards obtained by Beach Creek through an OPRA request do not contain such information.

- Approaches to Value: The contract states that commercial properties like Beach Creeks will be valued using the cost approach and income approach where applicable and that final commercial values will be determined in the field by a senior appraiser. No information has yet been obtained as to whether Cole Layer complied with this contractual requirement.

- Appraisal of Commercial Properties: The contract provides (page 29, paragraph 13.1.2) that commercial and industrial appraisers will review cost and income approaches concurrently in the field. This clearly requires input from such property owners. This clearly establishes the intent that such property owners would benefit from Cole Layer's performance under the contract. Further, Beach Creek has no information as to Cole Layer's compliance with this contract requirement.

- Delivery of Values: The contract provides that Cole Layer was to deliver three sets of appraisal values to the city - - preliminary, tentative and final. This reflects the intent in the contract to show to the land holders the PROPOSED Assessment. By showing this, the land holders can meet with the appraiser to review the proposed assessment. Again, this demonstrates the intent by the contract for the land holders to be benefited by Cole Layer's performance under the contract.[8]

---

[8] See the Certification of Theodore Lamicella submitted herewith.

15

Additional support for Beach Creek's third party beneficiary claim is provided in Section

5.3 of the Contract, which states:

### 5.3   FORMS AND HANDLING

The Company will produce five printed notices and the labor required to prepare each of the notices for mailing (or return). Specifically, CLT will print and organize Callback & Mailback Data Collection Door Hangers, Property Data Verification Mailers, Income Producing Property Income and Expense Forms, Sales Verification Letters and Full Disclosure Tentative Value Notices.   All mailings to property owners shall be approved by the City Assessor.

*Callback and Mailback Data Collection Door Hangers* will be left at properties where no occupant contract is made. In accompanying instructions, owners or occupants will be notified of the next planned property inspection (Callback – second attempt) and how to schedule an inspection (Mailback – third attempt). The instructions will encourage them to call the Company's project office or return the business reply postcard to request a specific inspection date and/or time. (Please note: The City and Company may agree to a commercially viable alternative method of notification if door hangers prove ineffective.)

*Property Data Verification Mailers* will be prepared for all properties and sent to owners for their review and possible corrections within four to six weeks of parcel data collection. The date of the last property inspection (or attempt) will be included.   Verification Mailers for properties where interior features were estimated will so indicate. If returned to CLT, simple inventory changes will be made directly to the City's database. Requests for more complex changes may require an additional site visit and/or re-inspection of the property.

*Income Producing Property Income and Expense Forms* for requests pursuant to N.J.A.C. 18:12A-1.8 and N.J.S.A. 54:4-35 will be sent certified mail to owners of apartment, commercial, industrial, retail and other income producing properties in the second quarter of 2004.

*Sales Verification Letters* will be sent to owners for properties that transfer within four calendar years (2001-2004) of the Project's Valuation Date (10//1/04).   Some sales verifications may be combined with data mailers.

*Full Disclosure Tentative Value Notices* (Notices to Taxpayers) will be sent to owners for all properties.   This "impact" style notice will list each property's old and proposed assessed values and tax extensions showing "before and after" amounts for City purposes.   Property owners will also be advised how to contact the Company to ask questions and/or schedule an appointment to discuss their Tentative Values.

The Company will pay all postage costs for the notices described above. The City will assist the Company in maintaining the lowest practicable postage costs. This will include making timely City file corrections to help avoid re-mailings caused by out-of-date or incorrect mailing addresses taken from City data files.

Thus, from what Beach Creek has been able to obtain through OPRA requests, we see a clear intent that Beach Creek and other property owners were to be intended beneficiaries under the Contract. The Contract also contains cross-indemnification provisions. Under those provisions, Cole Layer is obligated to defend and hold North Wildwood harmless for damages resulting from the performance of its work under the contract. Clearly this shows the intent that property owners, were patently a class of foreseeable parties who were to benefit by Cole Layer's proper performance under the contract.[9]

Cole Layer's reliance on the Restatement (Second) of Contracts §313(2) to claim that it could not be liable here is particularly weak. Cole Layer claims that under the Restatement it is immune from suit as it contracted with a public entity. No cases are cited by Cole Layer to support this claim. Further, the section relied upon by Cole Layer contains two exceptions, both of which apply here. The first is that third party liability will be imposed if the terms of the contract so provide. Here, as set forth above, the Contract clearly establishes an intent to benefit the property owners. The second exception is when the action against the promisor (Cole Layer) is consistent with the terms of the contract and the policy of the law prescribing remedies for its breach. As set forth above, any number of the provisions of the contract support Beach Creek's third party beneficiary claims. Further, here, under the contract, Cole Layer expressly indemnifies the municipality against negligence actions by third parties. Thus, this action against Cole Layer is entirely consistent with the terms of the Contract.

---

[9] There is simply no evidence to the contrary that has been submitted by Cole Layer. For example, Cole Layer has not submitted any evidence that the Contract intended to exclude Beach Creek as an intended beneficiary.

Moriah v. Cole Layer Trumble Company, 200 A.D. 2d 879, 606 N.Y.S. 2d 822 (1994), provides further instruction and counters Cole Layer's reliance on the Restatement. In that case, Cole Layer was engaged by the County of Essex in New York to perform assessment work. The town of Moriah was a municipality in Essex County that was to be impacted by Cole Layer's work under its contract with the County.   Moriah was dissatisfied with Cole Layer's performance under the Essex County contract and it sued Cole Layer under a third party beneficiary claim.

The Trial Court dismissed the suit holding that Moriah was not a third party beneficiary. However, the Appellate Division reversed and found that Moriah could be a third party beneficiary under the Essex County contract (even though it was a contract with a public entity). It also found that this issue presented issues of fact that could not be resolved by way of motion. This ruling is also supported by an unreported opinion of this Court entered by Judge Martini in the matter of Consult Urban Review Development Corp. v. T.R. Arnold & Assoc., Inc., CV No. 06-1684 (WJM). (A copy of the opinion is attached hereto as Exhibit A.) In that case, this Court found that viewing the facts before it most favorably to the plaintiff, the plaintiff could be a member of a class of third party beneficiaries intended to be benefited under a service contract. It also found that material issues of fact as to intent precluded the grant of summary judgment as to the issue.  Here, as well, more facts need to be developed through discovery as to the surrounding circumstances to further ascertain that intent. Nevertheless, on this record and in a motion to dismiss, the claim can not be dismissed.

A final note as to this issue is as to the claim made by Tyler repeatedly in its argument. On page 28 of its brief, Tyler states, "the taxpayer's only recourse is a successful appeal to the Tax Court." Not surprisingly, Tyler fails to cite any authority whatsoever for this claim. This is

18

simply a bold assertion made by Tyler's counsel. The law according to Tyler - - with no support from any Court or other binding authority - - is that Tyler was free to breach every provision in its contract, commit gross negligence in its appraisal process, tell the municipality that Beach Creeks' property should be assessed at four times its market value and have no resultant liability or responsibility. This is not only not the law, but it is utter nonsense.[10]

## II.    CRUSADER'S MOTION IS LIKEWISE DEVOID OF MERIT

Crusader's claim that Beach Creek can not maintain this action relies on many of the same flawed arguments advanced by Tyler. For the reasons set forth above, those arguments fail as a matter of law and a matter of fact. Thus, Crusader's motion should be denied as well.

Crusader's argument that Beach Creek can not maintain this action against it as to the invalidity of the tax lien it holds is directly contrary to N.J.S.A. 54:5-100. As set forth above, that statute expressly authorizes a property owner to challenge the validity of a municipal tax lien. It is well settled that a Court can not give validity to a void assessment. Nordell v. Mantia Twp., 45 N.J. Super. 253, 256 (Ch. Div. 1951); Brinkley v. Western World, Inc., 275 N.J. Super. 605 (Ch. Div. 1994).[11] Further, there is no dispute that Crusader will enforce its tax lien against the property. It has advised Beach Creek of its intent to foreclose its lien. Certification of Ronald T. Nagle ("Nagle Cert.")

In Nordell, the plaintiff property owner brought suit to challenge the validity of tax sale certificates issued as to its property.[12] The Court ruled in favor of the plaintiff, holding that

---

[10] As Beach Creek can maintain its breach of contract claims, it can maintain its breach of implied covenant claims. Further, Cole Layer was clearly unjustly enriched at Beach Creek's expense as Beach Creek is one of the largest ratable in the municipality.

[11] See also, A Review of the Tax Sale Law, 26 Seton Hall Law Review 1670, Section 3. (1996), by Michael Pellegrino and Ralph Allocco.

[12] Nordell clearly stands for the proposition that a real property owner can seek affirmative relief under N.J.S.A. 54:5-100. There is no doubt that Crusader intends to enforce its lien. Nagle Cert., Exhibit A.

where a tax certificate was void ab initio, it must be set aside under N.J.S.A. 54:5-100. This is precisely the case here. Crusader holds a tax lien certificate based on the valuation of Beach Creek's property at over four times its market value. The certificate is void ab initio as it was wrongfully issued. Nordell demonstrates that a property owner may initiate suite on its own. Thus, by statute and case law, it is entirely proper for Breach Creek to be in this Court with its claim against Crusader to void the tax certificate.

## III.    CRUSADER'S PROCEDURAL ARGUMENTS ARE LIKEWISE DEFECTIVE.

Crusader's arguments made throughout its brief are a series of remarkable contradictions. Crusader argues that this matter is a tax appeal that is time barred because Beach Creek missed the statute of limitations period on its appeal of the 2006 assessment. Then, Crusader argues on page 12 of its brief that this matter is not ripe for resolution as the 2007-2009 appeals are pending. Crusader can not have it both ways. Either Beach Creek is time barred or it is not. Either the matter belongs in Tax Court or it does not. In any event, this argument ignores the fact that the tax lien certificate at issue is based on the 2006 assessment. Thus, the appeals as to the 2007-2009 assessments have no bearing on this case. Moreover, Crusader ignores that an action under N.J.S.A. 54:5-100 is not time barred as to the 2007 tax lien certificate, which resulted from an erroneous and/or fraudulent assessment.

Crusader argues that this matter should be dismissed as North Wildwood is alleged to be an indispensable party. At the same time, in its forum non conveniens argument, Crusader states that the matter should be transferred to Camden as Crusader intends to file a third party claim against North Wildwood and the City of North Wildwood is located closer to Camden. This

---

No justification, legal or factual, exists to preclude the bringing of this action now for declaratory judgment that the lien is void.

argument, of course, contradicts Crusaders blatantly erroneous other argument that by joining North Wildwood as a third party, diversity will be destroyed.

Crusader also argues that the decision of the Tax Court, which was affirmed on appeal, bars Beach Creek from challenging the tax lien certificate purchased by Crusader. However, this plainly wrong legal analysis is directly contradicted by N.J.S.A. 54:5-100. Remarkably, Crusader cites this statute in its brief, yet fails to note its application to this challenge to its tax certificate.

Beach Creek submits that these numerous contradictions in Crusader's own arguments seriously undermines any credibility that those arguments could possibly have. This is more than arguing in the alternative. It is simply a "let's see if it sticks" approach that should be rejected by this Court. Moreover, Crusader is a sophisticated tax lien purchaser. Indeed, its pursues is solely to acquire tax liens. Beach Creek will seek to learn in discovery Crusader's procedures as to how it acquires tax liens. It will also seek to learn Crusader's knowledge here that the certificate it was purchasing resulted from an assessment that was clearly erroneous. Discovery will be undertaken to see if Crusader deviated from its own procedures and acquired a lien that far exceeds its actual value.

## A.    Crusader May Join North Wildwood If It Wants To

Crusader undertakes a lengthy dissertation as to indispensable parties and their joinder. Presumably this was done in aid of its argument that by joining North Wildwood as a third party defendant, diversity would be lost. Crusader seems not to have researched this issue. It is well settled that under Fed.R.Civ.P. 14, it is not required that diversity of citizenship exist between the third-party defendant and the plaintiff, or that diversity of citizenship exist between defendant, as third-party plaintiff, and the third-party defendant. See Spring City Corp. v.

21

American Bldgs. Co., 193 F.3d 165, 169 (3d Cir. 1999) (stating that "... a third-party defendant joined under Federal Rule of Civil Procedure 14 does not become a defendant as against the original plaintiff, so that federal jurisdiction is not destroyed where those parties are citizens of the same state.")(citing Smith v. Philadelphia Transp. Co., 173 F.2d 721, 724 n. 2 (3d Cir. 1949)); In re Albert & Maguire Securities Co., Inc., 70 F.R.D. 361, 363 (E.D.Pa. 1976)(citing Frankel v. Alan Wood Steel Co., 201 F.Supp. 203 (E.D.Pa. 1962); [*4] 3 Moore's Federal Practice, § 14.25, § 14.26).[13]

## B.    Res Judicata And Collateral Estoppel Simply Do Not Apply Here

Claim preclusion or res judicata requires a showing of three things: (1) the judgment in the prior action must be valid, final and on the merits; (2) the parties in the later action must be identical to the parties in the prior action; and (3) the claim in the later action must grow out of the same transaction as the earlier claim. Federated Dep't Stores v. Moite, 452 U.S. 394, 398 (1981). Issue preclusion or collateral estoppel requires that an issue of law or fact to be actually litigated and determined by a final judgment as to a matter involving the same parties but not necessarily as to the same claim. Kremer v. Chemical Construction Corp., 456 U.S. 461 (1982).

Here, claim preclusion does not apply as: (1) the tax court proceeding involved different parties, (2) there was no decision on the merits in that matter, and (3) this matter arises out of an entirely distinct occurrence. Here, the causative act was the creation and sale of an invalid and/or fraudulent tax certificate that arose out of Cole Layer's negligent assessment in breach of its contract with North Wildwood. Beach Creek seeks to void the tax sale certificate as it is based on an invalid and/or fraudulent assessment by Cole Layer.

---

[13] No real reason as to how North Wildwood is an indispensable party is given by Crusader. North Wildwood exists, it is subject to this Court's jurisdiction and its joinder will not destroy diversity. North Wildwood is hardly indispensable.

Further, the tax appeal was dismissed based on the perceived failure to file the appeal within the statute of limitations period. This is not a decision on the merits of the tax appeal. The rule is that a dismissal based on a Court's procedural inability to consider a case will not preclude a subsequent action on the same claim. Watkins v. Resorts International, 124 N.J. 388 (1991). That rule applies four square here as there was no decision on the merits of Beach Creek's tax appeal. Claim preclusion or collateral estoppel fails here as well as the defendants here were not parties to the tax appeal and, more importantly, no issue of law or fact was actually decided as to the tax appeal. Thus, there was no prior resolution of an issue that precludes its litigation in this matter now.[14]

## C.    The Matter Should Not Be Transferred

Crusader makes a half way attempt at an argument that this matter should be transferred to Camden based on the doctrine of forum non conveniens. Putting aside for now the fact that Crusader has failed to meet its burden under this doctrine, it is questionable whether it even applies. Forum non conveniens is an argument invoked to transfer a matter from one forum to another. Here, Crusader seeks a transfer within the same District. This is not really a transfer to a new forum and, arguably, this is not a transfer to a new forum. The forum of the District of New Jersey would remain the same, only the courthouse would be different. Further, and more importantly, the Court has already determined at the time of the filing of the Complaint that this matter is properly venued in Newark. Crusader has made no showing that this original decision was in error or should be disturbed.

Crusader's argument to transfer under 28 U.S.C. § 1404(a) fails as well. The moving party has the burden of persuasion on its forum non conveniens motion. Lony v. E.I. DuPont de

---

[14] Beach Creek can maintain an unjust enrichment claim against Crusader. The lien held by Crusader is vastly over value. To the extent it is redeemed, Crusader would be unjustly enriched.

Nemours & Co., 886 F.2d 628, 633 (3d. Cir. 1989). In this regard, the moving party must show that the proposed alternative forum is not only adequate but is more convenient than the present forum. In this regard, the moving party has the burden of creating a competent factual record to demonstrate its claims. Lacey v. Cessna Aircraft Co., 862 F.2d 38, 44 (3d. Cir. 1988). The facts must be established by competent proofs. Id. The facts must weigh "strongly in favor" of the transfer. Gulf Oil v. Gilbert, 330 U.S. 501. The Plaintiff's choice of forum is also given great deference.

Here, Crusader has not provided the Court with any competent proofs that weigh "strongly in favor" of transfer. No affidavit by any person with personal knowledge has been submitted. No factual record of any kind has been made by Crusader to support a transfer. All Crusader has put forth is the argument of counsel in its brief. This is not a factual record to support a transfer under 28 U.S.C. § 1404(a).

On page 31 of its brief Crusader attempts a justification for a transfer by stating that it is located in Jenkintown, Pennsylvania, "which is in close proximity to the Camden District Court." This is the sole basis for Crusader's request to transfer the matter to Camden. However, Crusader does not identify a single witness that is located in any venue. It does not identify documents that are located in any venue. It does not express at all how Camden would possibly be more convenient for any purpose in this matter. Indeed, Cole Layer is located in Ohio. It is inconceivable how Camden is more convenient for Cole Layer coming from Ohio. In short, the only justification put forth by Crusader that Camden is more convenient is that Crusader is located closer to Camden because it is in Pennsylvania. To move the case now based solely on this reason simply makes no sense. Crusader has failed on every level to demonstrate the factors

24

necessary for a <u>forum non conveniens</u> transfer. That aspect of its motion should be denied as well.

## IV.    BEACH CREEK HAS BEEN AND CONTINUES TO BE HARMED

The property underlying this dispute houses a marina, restaurant, apartment building, and offices. It is a commercial operation. Through Cole Layer's negligent evaluation process, a lien exceeding $500,000.00 has been placed on Beach Creek's property. Crusader holds that lien as a first lien on the property. Crusader intends to enforce its lien. Nagle Cert., Exhibit A. The destructive value of holding a first lien on a commercial property is well recognized.

The very existence of a lien on commercial property has several significant and well settled effects. The lien impacts the ability of the property owner to obtain financing. The lien could potentially be an event of default under existing financing. It is a cloud on the title of the property. The lien also affects the good will of Beach Creek's business. Beach Creek faces the very real possibility that the tax lien certificate could be foreclosed. This could result in the loss of title to Beach Creek's property through foreclosure proceedings. This is clearly an inequitable result stemming from the completely wrong and erroneous assessment by Cole Layer. In short, the lien greatly impacts a commercial operation like Beach Creeks.

Beach Creek has submitted to this Court a certification by its expert stating that the assessment by Cole Layer could only be the result of negligence by Cole Layer. In connection with the tax appeal matter, North Wildwood provided a subsequent appraisal dated March 12, 2009 of the underlying property. That appraisal was for the years 2005-2008. Nagle Cert., Exhibit B. It set the value of Beach Creek's property at $4,600,000.00. This is ten million dollars less than the Cole Layer assessment. Second sight is not required to see that something tremendously wrong occurred here. The entity harmed in the process was Beach Creek. It faces

further harm if the lien is foreclosed and it losses title to its property. Its remedies are those sought in this matter. Equity and fairness require that the harm to Beach Creek be redressed at this stage and in this Court.

## CONCLUSION

respectfully submit that the motions to dismiss filed by Defendants Royal Tax Lien Services, LLC d/b/a Crusader Lien Services, Cole Layer Trumble Company and Tyler Technologies, Inc. should be denied in their entirety.

Dated: August 17, 2009

RONALD T. NAGLE, P.C.
Attorney for Plaintiff
Beach Creek Marina, Inc.

Ronald T. Nagle