## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

BEACH CREEK MARINA, INC.

        Plaintiffs,

        v.

ROYAL TAX LIEN SERVICES, LLC
  d/b/a CRUSADER LIEN SERVICES,
COLE LAYER TRUMBLE COMPANY,
And TYLER TECHNOLOGIES INC.,

        Defendants.

**CIVIL ACTION NO. 2:09-cv-2649**

## PLAINTIFF'S BRIEF IN FURTHER OPPOSITION TO
## DEFENDANTS'MOTIONS TO DISMISS THE COMPLAINT

**RTN (8517)**
**RONALD T. NAGLE, P.C.**
52 South Street
Morristown, New Jersey 07960
Telephone: (973) 267-6780
Facsimile: (973-267-6738
Attorney for Plaintiff Beach Creek, Inc.

## PRELIMINARY STATEMENT

This Brief Reply is submitted by Plaintiff Beach Creek Marina, Inc. ("Beach Creek") as to the motions to dismiss filed by Defendants Cole Layer Trumble Company and Tyler Technologies, Inc. (collectively "Cole Layer") and Royal Tax Lien Services, LLC d/b/a Crusader Lien Services ("Crusader"). The Defendants' motions were filed on July 24, 2009. Since then, certain facts have come to light that bear directly upon the motions. As such, Beach Creek is compelled to bring these facts to the Court's attention and respectfully requests that the Court accept this short memorandum.

On September 4, 2009, Crusader sent several "notice of impending foreclosure action" letters to various companies, including Beach Creek. **Such letters all provide that Crusader will act to foreclose the tax lien at issue on October 5.** (Attached hereto as Exhibit A are copies of the September 4, 2009 foreclosure notice letters sent by Crusader). The amount that Crusader states it now seeks to redeem from the tax certificate at issue is $486,635.30. This is the amount of alleged unpaid taxes, interest and penalties calculated from the Property being assessed at $14,612,900 in 2006 (In 2005 the Property was assessed at $1,526,200). By its own actions, Crusader has clearly joined issue as to the tax lien it holds and has already begun to take action which will cause imminent and immediate irreparable harm to Beach Creek.[1] There is simply no reason for delay as to the claims against Crusader. The claims of Beach Creek as to the tax certificate are ripe for resolution here and now in this Court.

In addition, in another matter, the deposition of the tax assessor for North Wildwood was taken on August 18, 2009. Portions of the transcript are attached hereto as Exhibit B. The

---

[1] As set forth below, Beach Creek has real and substantial monetary damages in this matter. Significantly, the mere existence of the lien on Beach Creek's property also causes harm to Beach Creek on a daily basis. Beach Creek is unable to seek financing due to the lien and the lien creates issues as to present financing. Thus, the harm that Beach Creek suffers is immediate and irreparable.

deposition makes clear that Cole Layer had clear contractual obligations under its contract to perform all of the mass property revaluation work for the 2006 re-assessment in the City of North Wildwood. The deposition also makes clear that the municipality relied solely on Cole Layer to establish the assessed values for properties within the municipality, including Beach Creek's property. Cole Layer's effort to hide behind the municipality to avoid liability for its own negligence must be rejected. The Tax Assessor for the municipality clearly establishes Cole Layer's leading role as to resetting the property values in the municipality. It was Cole Layer, and not the municipality, that increased Beach Creek's property value by over thirteen million dollars in one year. Cole Layer is responsible for this patently erroneous result. (Attached hereto as Exhibit C is a copy of Beach Creek's Affidavit of Merit from its expert, which support's Beach Creek's malpractice claim against Cole Layer.)

To follow Cole Layer and Crusader's arguments and dismiss the Complaint would leave Beach Creek without a remedy against these Defendants. There is no question that grievous errors occurred in the Cole Layer's revaluation work and the resulting amounts of monetary obligations created and purchased thereupon by Crusader. In light of the lien and foreclosure powers held and now advanced by Crusader by virtue of Cole Layer's wrongful assessment, dismissing Beach Creek's Complaint is clearly an inequitable and unjust result. Beach Creek is not trying to side step the tax appeal process as that process has no application to the claims asserted by Beach Creek here. For the reasons set forth herein and as previously expressed by Beach Creek, the wrongs that resulted in the harm to Beach Creek are most appropriately resolved in this Court at this time.

## LEGAL ARGUMENT

### I.   THIS COURT HAS JURISDICTION OVER THIS MATTER.

Cole Layer and Crusader's constant refrain that this is a tax appeal that belongs in the Tax Court is wrong on several levels. A tax appeal by necessity is taken against a municipality. Here, no municipality is a party to this case. A tax appeal involves a claim centering on the proper assessed value of real property for purposes of establishing appropriate taxation and collection. Here, Beach Creek is asserting common law claims of a distinct and separate nature against non-municipal entities where technical expertise in taxation has no relevance. A tax appeal is made to the Tax Court, which is a Court of very narrow purpose and limited jurisdiction encompassing taxation matters involving state, county and municipal agencies and officials. *See*, N.J.S.A. 2B:13-2A. Conversely, this Court has both legal and equitable authority to decide all types of common law claims under its diversity jurisdiction. No Tax Court would hear and decide the common law claims asserted by Beach Creek in this case. Beach Creek's claims of professional negligence, breach of contract and others involving the tax lien certificate holder and revaluation company are matters *outside* the jurisdictional realm of the Tax Court.[2] Indeed, the claims made by Beach Creek here are distinct and approximate before this Court.

_____

[2] The Tax Court, within the strictures of its narrow technical competence and jurisdictional ambit, will simply adjudicate the reasonable value of Plaintiff's property as a basis for taxation. Once the Tax Court fixes the assessed value, any excess sums paid for taxes shall be refunded together with the applicable prorated share of interest and costs relative to such excess taxation. Such refund is made irrespective of whether the property owner or a tax sale certificate purchaser is the payor of the excess taxation. Thus, only the matter of what is properly owed for taxes and collectible by the municipality is established in the Tax Court. Moreover, a tax sale certificate is simply an instrument which evidences a step in liquidating the statutory lien for taxes into cash. See N.J.S.A. 54:5-46, et. seq. See also Varsolona v. Breen Capital Services Corp., 180 N.J. 605, 616-622 (2004). It is not the same as the taxes themselves, and it can neither validate a void assessment of taxes nor create an obligation for taxes not otherwise due. See Hudson Co. Park Comm. v. Jacobson, 132 N.J.L. 287, 289 (Sup. Ct. 1944); Brinkley v. Western World, Inc., 275 N.J. Super. 605, 609-611 (Ch. Div. 1994), aff'd o.b., 292 N.J. Super. 134, 136 (App. Div. 1996); Nordell v. Twp. of Montua, 45 N.J. Super. 253, 258 (Ch. Div. 1957). Finally, the Tax Court would have no jurisdiction over a void lien certificate.

Further, the pending Tax Court matter involving an assessment dispute between Beach Creek and the municipality is narrow and technical in scope. In it, Beach Creek alleges an assessable value for the commercial parcel of $3,000,000, on the one hand, and the municipality alleges an assessable value of $4,600,000 on the other for the years 2006 through 2009.[3] Beach Creek's appeal of the 2006 tax year was determined by the Tax Court to be late by two days, and has thus been ruled to be barred by applicable statute of limitations for property tax appeals. Neither the Tax Court opinion nor the Court of Appeals opinion made any substantive determination on any of the merits of Beach Creek's case. Those decisions were solely limited to the procedural timing of Plaintiff's 2006 tax appeal and time allotted by statute to file it.[4]

This Court's jurisdiction is further bolstered by Beach Creek's damages. There is undeniably no question that Beach Creek has real damages due to the Defendants' conduct. To illustrate, the 2006 tax appeal was found to be time-barred by the tax appeal statute of limitations. The erroneous assessment by Cole Layer resulted in an excess payment of up to $78,000 toward Crusader's tax certificate together with interest, penalties and costs of $60,000+. This comes to a total of approximately $138,000 in damages to Beach Creek for just 2006 alone. Due to the ruling of the Tax Court, this amount will *not* be refunded to Crusader by the municipality in the pending tax appeal matter. Nevertheless, under Crusader's faulty and self-serving reasoning, the Tax Court decision entitles it to either: (a) a windfall premium in the

---

[3] The municipality has admitted that the $14,612,900.00 figure set by Cole Layer was in error. This, however, does not remove the harm to Beach Creek as it continues to be damaged by the Defendants' conduct.

[4] For these reasons, issue preclusion and res judicata do not apply. For issue preclusion to apply, the following elements must be met: "(1) the identical issue was decided in a prior adjudication; (2) there was a final judgment on the merits; (3) the party against whom the doctrine is asserted was a party…to the prior adjudication; and (4) the party against whom it is asserted had a full and fair opportunity to litigate the issue in the prior adjudication." Bd of Trs. Of Trucking Employees of N. Jersey Welfare Fund, Inc. v. Centra, 983 F. 2d 495, 505 (3d Cir. 1992). Here, none of these elements can be met given the disposition of the Tax Court matter.

approximate amount of $138,000 on its lien certificate, or (b) the right to foreclose and take title of Beach Creek's property. Yet, remarkably, Crusader thinks that Beach Creek has no claims against it. Such a position is clearly inconsistent with the legislative mandate of N.J.S.A. §54:5-100 to void tax sale certificates issued in error or by fraud. This is precisely what Beach Creek seeks here.

Despite the clear damages to Beach Creek, the end result of Crusader's argument would leave Beach Creek without any remedy under New Jersey law. The clear and imminent harm Beach Creek will suffer is without question. Beach Creek has successfully and responsibly owned and operated the Property since 1987. Now, due to the conduct of the Defendants, it finds itself subject to irreparable harm through the potential loss of its property. New Jersey law empowers this Court to act to void the tax certificate and stop the foreclosure powers conveyed thereby.[5]

Significantly, Cole Layer has not provided any argument to oppose the fact that it established the valuation that resulted in the issuance of a tax sale certificate based on a $14,600,000 assessment of Beach Creek's property. In an appraisal report subsequently filed by the municipality, the municipality now admits to a potentially correct assessment of up to $4,600,000.00 for years 2006, 2007, 2008 and 2009. See Beach Creek's Opposition papers,

---

[5] In the few published opinions relating to irregularities in tax sales, courts have consistently held that any irregularity in a tax sale requires that the sale be deemed invalid. In Harrington Co. v. Horster, 89 N.J. Eq. 270, 273 (Ch. 1918), the Court stated: "The due performance of every step in the proceedings even in the most minute particulars is condition precedent to the validity of the sale…" See also Woodbridge v. Allen, 43, N.J.L. 262, 270 (1881). The Court explained: *[t]he power to sell lands for taxes is a naked power, and the validity of a title  derived from such a sale depends upon a strict compliance with the directions of the statute.  The officer entrusted with the power of sale exercises a naked statutory and special authority, depending upon the letter of the law for its support. He must act in conformity with the law from which his power is derived: and a purchaser at such a sale is bound to inquire whether he has so acted. It is, therefore, a condition precedent to the passing of titles at such sales that all the proceedings of the officers who have anything to do with the assessment and the collection of taxes, or with the advertisement and sale of the property, shall be in compliance with the statute authorizing the sale. Id. (citations ommitted).*

Nagle Cert, Exhibit B. This effectively destroys Crusader and Cole Layer's argument that there is no factual basis for the determination that the tax sale certificate is based on an erroneous and void assessment. The municipality has admitted that the $14,600,000 assessment is void by virtue of its $4,600,000 Tax Court appraisal report filing.

If it needs to be said, Crusader is not without remedy if the Court voids the tax sale certificate. Specifically, N.J.S.A. 54:5-43 provides that when a tax certificate is deemed invalid after it has been sold, the certificate holder is entitled to reimbursement by the municipality-issuer of the amounts paid plus lawful interest.[6] Under this statute, Crusader may seek its own remedy. Likewise, should Cole Layer be found by this Court to have caused the issuance of the tax sale certificate through professional negligence in the performance of its assessment duties during the revaluation of Beach Creek's property, Crusader may seek appropriate damages for any lost interest, costs and/or penalties from Cole Layer. Crusader prefers to overlook the equities and protections of New Jersey law and have it both ways: receive moneys for amounts wrongfully charged under a void tax sale certificate and maintain the foreclosure rights despite the invalidity of the monetary obligations created by the voided certificate.[7]

Crusader's effort to dismiss this case with the argument that Beach Creek must wait for another day rings hollow in light of Crusader's conduct. There can be no dispute that Crusader intends to foreclosure its putative rights under the tax certificate. At page 8 of its reply brief, Crusader states: "[Crusader] has initiated foreclosure proceedings..." Crusader has also provided written notice of its actions to attempt enforcement of the tax sale certificate lien. (Again, see Exhibit A hereto). Time is of the essence in imposing a N.J.S.A. 54:5-100 remedy to the matter before this Court. Crusader is seeking to avail itself of foreclosure rights obtained

---

[6] N.J.S.A. 54:5-43. See also Tontodanati, 229 N.J. Super. At 480, 551 A.2d 1056.
[7] Brinkley, 275 N.J. Super. at 611 (citing Tontodanati v. Paterson, 229 N.J. Super. 475 (App. Div. 1989)).

6

through its acquisition of void tax sale certificate. Crusader's own actions to pursue foreclosure make this matter ripe now for the remedies that may be afforded by this Court pursuant to N.J.S.A. 54:5-100. Further, N.J.S.A. 54:5-105 provides that the owner of property encumbered by a tax certificate may file an action in court to have the certificate declared cancelled. No like remedy can be obtained in Tax Court. The parties are joined here. The issues are ripe for resolution in this Court.

## II.   BEACH CREEK'S COMMON LAW CLAIMS CAN NOT BE DISMISSED.

Cole Layer attempts to avoid liability here by claiming it was merely an "advisor" to the municipality. In reality, it was far more than that. The municipality hired Cole Layer to establish the new tax values for the properties in the municipality. The municipality never performed any of its own assessment work in this regard. It, in fact, relied solely on Cole Layer to set the values. The municipality then simply "rubber stamped" those values and sent out new tax bills to the property owners.

Cole Layer's argument that it could fail to do what it was hired to do and face no resultant liability outside of its relationship with the municipality makes a sham of it's holding itself out as a credentialed real estate appraisal expert qualified to perform mass revaluations of properties within the State of New Jersey. The municipality hired Cole Layer to place new higher values on the properties within the municipality. From the municipality's standpoint, the higher the value that Cole Layer set the better. Simple logic compels the conclusion that there is no plausible scenario where the municipality would act to sue Cole Layer for negligence. Any negligence by Cole Layer by failing to do its job in setting the higher tax value inures to the benefit of the municipality.

Thus, under Cole Layer's reasoning, it was free to do whatever it wanted to do in setting the values of individual owners' properties in North Wildwood and it could never be liable to any third party in doing this. Clearly this can not stand. Cole Layer is a professional organization hired to perform a professional task. Cole Layer had a duty as a matter of law and under a codified professional standard of care and regulations to set the property values in an appropriate way.[8] Cole Layer failed to do this and Beach Creek was substantially harmed in the process.[9] Cole Layer is liable to Beach Creek under Beach Creek's common law claims.

## CONCLUSION

Based on the foregoing arguments and authority, Plaintiff Beach Creek Marina, Inc. respectfully submit that the motions to dismiss filed by Defendants Royal Tax Lien Services, LLC d/b/a Crusader Lien Services, Cole Layer Trumble Company and Tyler Technologies, Inc. should be denied in their entirety.

Dated: September 29, 2009

                              RONALD T. NAGLE, P.C.
                              Attorney for Plaintiff
                              Beach Creek Marina, Inc.

                              Ronald T. Nagle

---

[8] Indeed, Section 1 of the Contract provides that Cole Layer "will establish market value for all surface properties, including tax exempt real estate and those with improvements under construction on the Valuation Date, in accordance with N.J.S.A. 54:4-1 et seq, N.J.A.C. 18:12-4.8 and the procedures and standards, specified in Standard 6 the "Mass Appraisal Standard", of the Uniform Standards of Professional Appraisal Practice (USPAP)."

[9] Significantly, Cole Layer has not challenged in any way the conclusion of Beach Creek's expert that by setting the appraisal value of Beach Creek's property at $14,612,900.00, Cole Layer necessarily failed to appropriately value the property.

8

EXHIBIT A

ZEITZ & STEIN, L.L.C.
*ATTORNEYS AT LAW*
201Barclay Pavilion West
Cherry Hill, New Jersey 08034
(856) 857-1222 • fax (856) 857-1234

September 4, 2009

* *VIA CERTIFIED MAIL* *

Consult Urban Renewal Development Corp.
c/o Anthony G.Coscia, Registered Agent
Windels, Marx, Davies & Ives
120 Albany Street Plaza
New Brunswick, NJ 08903

> Tax Sale Certificate(s) Number(s): 06-00225
> Property: 610 New York Avenue
> Municipality: North Wildwood
> County: Cape May
> Tax Block: 152          Lot: 1
> Assessed owner: Beach Creek Marina Inc.
> Amount required to redeem from tax sale: $486,635.30

Dear Sir/Madam:

Please be advised that Royal Tax Lien Services L.L.C. d/b/a Crusader Lien Services L.L.C. is the holder of the above tax sale certificate liens against the above referenced properties. A review of the title report indicates that you have an interest in this property by virtue of a deed, mortgage or other recorded encumbrance.

As of the date of this letter, approximately the amount stated above is due to redeem this property from tax sale. Arrangements to do so must be made with the Tax Collector for the above Municipality. Interest continues to accrue on the principal balance of the certificate(s), and the amount may include additional subsequent tax payments and other penalties.

Please take notice that if redemption is not made within thirty (30) days of the date of this letter, a complaint will be filed to foreclose the right to redeem the property from tax sale. Upon the foreclosures filing, you may become responsible for various costs as permitted by New Jersey Statute and Court Rule.

Sincerely,
/s/ *Gary C. Zeitz*
GARY C. ZEITZ

ZEITZ & STEIN, L.L.C.
*ATTORNEYS AT LAW*
201Barclay Pavilion West
Cherry Hill, New Jersey 08034
(856) 857-1222 • fax (856) 857-1234

September 4, 2009

*\* VIA CERTIFIED MAIL \**

Marina Bay Towers Urban Renewal II L.P. Urban
c/o Paul A. Cocoziello, Registered Agent & President
The Rubicon Companies L.L.C.
11-43 West Raymond Plaza, Suite 920
Newark, NJ 07102

> Tax Sale Certificate(s) Number(s): 06-00225
> Property: 610 New York Avenue
> Municipality: North Wildwood
> County: Cape May
> Tax Block: 152        Lot: 1
> Assessed owner: Beach Creek Marina Inc.
> Amount required to redeem from tax sale: $486,635.30

Dear Sir/Madam:

Please be advised that Royal Tax Lien Services L.L.C. d/b/a Crusader Lien Services L.L.C. is the holder of the above tax sale certificate liens against the above referenced properties. A review of the title report indicates that you have an interest in this property by virtue of a deed, mortgage or other recorded encumbrance.

As of the date of this letter, approximately the amount stated above is due to redeem this property from tax sale. Arrangements to do so must be made with the Tax Collector for the above Municipality. Interest continues to accrue on the principal balance of the certificate(s), and the amount may include additional subsequent tax payments and other penalties.

Please take notice that if redemption is not made within thirty (30) days of the date of this letter, a complaint will be filed to foreclose the right to redeem the property from tax sale. Upon the foreclosures filing, you may become responsible for various costs as permitted by New Jersey Statute and Court Rule.

> Sincerely,
> /s/ Gary C. Zeitz
> GARY C. ZEITZ

ZEITZ & STEIN, L.L.C.
*ATTORNEYS AT LAW*
201Barclay Pavilion West
Cherry Hill, New Jersey 08034
(856) 857-1222 • fax (856) 857-1234

September 4, 2009

#### * VIA CERTIFIED MAIL *

Marina Bay Towers Condominium Association Inc.
c/o Paul A. Cocoziello, Registered Agent & President
The Rubicon Companies L.L.C.
11-43 West Raymond Plaza, Suite 920
Newark, NJ 07102

> Tax Sale Certificate(s) Number(s): 06-00225
> Property: 610 New York Avenue
> Municipality: North Wildwood
> County: Cape May
> Tax Block: 152          Lot: 1
> Assessed owner: Beach Creek Marina Inc.
> Amount required to redeem from tax sale: $486,635.30

Dear Sir/Madam:

Please be advised that Royal Tax Lien Services L.L.C. d/b/a Crusader Lien Services L.L.C. is the holder of the above tax sale certificate liens against the above referenced properties. A review of the title report indicates that you have an interest in this property by virtue of a deed, mortgage or other recorded encumbrance.

As of the date of this letter, approximately the amount stated above is due to redeem this property from tax sale. Arrangements to do so must be made with the Tax Collector for the above Municipality. Interest continues to accrue on the principal balance of the certificate(s), and the amount may include additional subsequent tax payments and other penalties.

Please take notice that if redemption is not made within thirty (30) days of the date of this letter, a complaint will be filed to foreclose the right to redeem the property from tax sale. Upon the foreclosures filing, you may become responsible for various costs as permitted by New Jersey Statute and Court Rule.

> Sincerely,
> /s/ *Gary C. Zeitz*
> GARY C. ZEITZ

ZEITZ & STEIN, L.L.C.
*ATTORNEYS AT LAW*
201Barclay Pavilion West
Cherry Hill, New Jersey 08034
(856) 857-1222 • fax (856) 857-1234

September 4, 2009

**** VIA CERTIFIED MAIL ****

Beach Creek Marina Inc.
c/o Paul A. Cocoziello, Registered Agent & President
Gateway One, Suite 920
11-43 West Raymond Plaza
Newark, NJ 07102

Tax Sale Certificate(s) Number(s): 06-00225
Property: 610 New York Avenue
Municipality: North Wildwood
County: Cape May
Tax Block: 152 Lot: 1
Assessed owner: Beach Creek Marina Inc.
Amount required to redeem from tax sale: $486,635.30

Dear Sir/Madam:

Please be advised that Royal Tax Lien Services L.L.C. d/b/a Crusader Lien Services L.L.C. is the holder of the above tax sale certificate liens against the above referenced properties. A review of the title report indicates that you have an interest in this property by virtue of a deed, mortgage or other recorded encumbrance.

As of the date of this letter, approximately the amount stated above is due to redeem this property from tax sale. Arrangements to do so must be made with the Tax Collector for the above Municipality. Interest continues to accrue on the principal balance of the certificate(s), and the amount may include additional subsequent tax payments and other penalties.

Please take notice that if redemption is not made within thirty (30) days of the date of this letter, a complaint will be filed to foreclose the right to redeem the property from tax sale. Upon the foreclosures filing, you may become responsible for various costs as permitted by New Jersey Statute and Court Rule.

Sincerely,
*/s/ Gary C. Zeitz*
GARY C. ZEITZ

ZEITZ & STEIN, L.L.C.
*ATTORNEYS AT LAW*
201Barclay Pavilion West
Cherry Hill, New Jersey 08034
(856) 857-1222 • fax (856) 857-1234

September 4, 2009

*\* VIA CERTIFIED MAIL \**

PAC Capital L.L.C.
c/o Paul Cocoziello, Registered Agent & CEO
One Gateway Center
11-43 West Raymond Plaza, Suite 920
Newark, NJ 07102

> Tax Sale Certificate(s) Number(s): 06-00225
> Property: 610 New York Avenue
> Municipality: North Wildwood
> County: Cape May
> Tax Block: 152      Lot: 1
> Assessed owner: Beach Creek Marina Inc.
> Amount required to redeem from tax sale: $486,635.30

Dear Sir/Madam:

Please be advised that Royal Tax Lien Services L.L.C. d/b/a Crusader Lien Services L.L.C. is the holder of the above tax sale certificate liens against the above referenced properties. A review of the title report indicates that you have an interest in this property by virtue of a deed, mortgage or other recorded encumbrance.

As of the date of this letter, approximately the amount stated above is due to redeem this property from tax sale. Arrangements to do so must be made with the Tax Collector for the above Municipality. Interest continues to accrue on the principal balance of the certificate(s), and the amount may include additional subsequent tax payments and other penalties.

Please take notice that if redemption is not made within thirty (30) days of the date of this letter, a complaint will be filed to foreclose the right to redeem the property from tax sale. Upon the foreclosures filing, you may become responsible for various costs as permitted by New Jersey Statute and Court Rule.

> Sincerely,
> /s/ *Gary C. Zeitz*
> GARY C. ZEITZ

EXHIBIT B

```
 1                   UNITED STATES DISTRICT COURT
                     DISTRICT OF NEW JERSEY
 2                   CIVIL ACTION NO. 1:09-cv-369

 3   MARINA BAY TOWERS URBAN   :
     RENEWAL, II, L.P.         :
 4                             :
                  Plaintiff,   :
 5                             :
          vs.                  :    DEPOSITION OF:
 6                             :    JOSEPH M. GALLAGHER
     CITY OF NORTH WILDWOOD,   :
 7                             :
                  Defendant.   :
 8   - - - - - - - - - - - - - -X

 9             TRANSCRIPT of the stenographic notes of

10   the proceedings in the above-entitled matter, as

11   taken by and before MARY G. VAN DINA, a Certified

12   Court Reporter and Notary Public of the State of New

13   Jersey, held at the office of CAFIERO & BALLIETTE,

14   ESQUIRES, 3303 New Jersey Avenue, Wildwood, New

15   Jersey, on Tuesday, August 18, 2009, commencing at

16   9:40 in the forenoon.

17

18

19

20             ROSENBERG & ASSOCIATES, INC.

21        Certified Court Reporters & Videographers

22    425 Eagle Rock Ave., Suite 201      575 Madison Ave.

23   Roseland, NJ 07068              New York, NY 10022

24    (973) 228-9100    1-800-662-6878    (212) 868-1936

25             www.rosenbergandassociates.com
```

61

1        Q.     It's not clear to you, my question?

2        A.     The way it was phrased, it's not clear

3    to me.

4        Q.     Sir, what is the purpose of a

5    revaluation?

6        A.     To create an equitable distribution of

7    the tax burden throughout a municipality.

8        Q.     And can you describe what effort the

9    City of North Wildwood undertook to implement a

10   revaluation in 2006?

11       A.     The municipality went out to bid for

12   vendors to do inspections and to do -- place values

13   on properties throughout the town, updated their tax

14   map and took photographs of properties, attempted to

15   do interior inspections of properties, and then

16   completed the task with placing values as of October

17   1, 2005 onto the 2006 tax rolls.

18       Q.     So is it fair to say that the purpose of

19   the revaluation is to update all the properties

20   within the city boundaries?

21       A.     Correct.

22       Q.     And so North Wildwood put out to bid a

23   contract for a third party to perform the necessary

24   revaluations of the properties throughout the

25   municipality?

62

```
 1        A.      Yes.
 2        Q.      Do you recall who was the successful
 3   bidder?
 4        A.      I believe it was Cole, Layer, Trumble
 5   was the successful bidder.
 6        Q.      Okay.  We're going to come back to that,
 7   sir.
 8             Let me spend another moment or two on
 9   what we've marked as Gallagher-6.
10             With respect to the three properties
11   that we've been focusing on, aside from the
12   renumbering of the lots, do you see a change in the
13   ownership?
14        A.      Yes.
15        Q.      What changed?
16        A.      It went from what would be called Sixth
17   and New York Avenue, which had been -- on the number
18   5 exhibit was known as 152, 400, Block 152, 400 is
19   now Block 152, 1.
20             It appears that the land description has
21   changed.  The description in the building
22   descriptions have changed.  The additional lot
23   numbers have all disappeared, and you went from
24   Marina Bay Towers Urban Renewal, LP to Marina Bay
25   Towers Urban Renewal -- I'm going to say II or it
```

67

```
 1   that could change after January, but then it would
 2   appear -- just the same as if there was a sale of the
 3   property, so when it changed I can't tell you.
 4        Q.     So it may have changed on the tax list?
 5   It may not have?
 6        A.     That's correct.
 7        Q.     Now, let's look at taxable value, sir.
 8        A.     Right.
 9        Q.     Now, sir, would you say that there was a
10   material change in the taxable value from '05 to '06?
11        A.     A material change?  There's a change in
12   the value, yes.
13        Q.     And that's the change, sir, from what
14   amount to what?
15        A.     It appears from 1,526,200 gross number
16   to $14,612,900.
17        Q.     So it goes from roughly one and a half
18   million to roughly 14 and a half million?
19        A.     Yes.
20        Q.     Is that right?
21        A.     Yes, correct.
22        Q.     Okay.  Would you call that material,
23   sir?
24        A.     I don't know if I would call it
25   material.
```

1  that there was a sales comparison approach to come up

2  with the valuation of Block 152, Lot 1?

3       A.    Yes.

4       Q.    And do you believe that there was an

5  income valuation prepared in order to come up with

6  the valuation for 152, Lot 1?

7       A.    Yes.

8       Q.    And how about a cost analysis?

9             Do you believe there was a cost analysis

10  done in order to come up for the valuation for 152,

11  Lot 1?

12       A.    Yes.

13       Q.    And who did the sales comparison, the

14  income analysis and the cost analysis?

15       A.    I would have to say it was somebody from

16  the -- our vendor.

17       Q.    Cole Layer?

18       A.    Cole, Layer, Trumble, yes.

19       Q.    Do you recall ever seeing such an

20  analysis?

21       A.    On this particular property -- I hadn't

22  looked at this property in several years.  I don't

23  recall what would have been prepared.

24       Q.    Do you recall looking at a cost, an

25  income or a sales comparison analysis for any

73

```
1         A.    Yes.
2         Q.    Do you see where the lot and block
3   changed there, too?
4         A.    Yes.
5         Q.    And that was for the same reason, the
6   remapping?
7         A.    Correct.
8         Q.    Or renumbering?  I'm sorry.  The
9   renumbering.
10        A.    Renumbering.
11        Q.    Do you see where the owner changed?
12        A.    Yes.
13        Q.    Do you know why the owner changed?
14        A.    No.
15        Q.    Did you have anything to do with the
16   change of the owner, as shown on Gallagher-6?
17        A.    I don't know.
18        Q.    You don't recall?
19        A.    I don't recall.
20        Q.    Sir, could you describe your duties and
21   responsibilities with respect to the revaluation?
22        A.    My duties would be to review the
23   information that's given to the revaluation company,
24   to give them sales, give them copies of deeds, give
25   them maps, help them in data collection as the time
```

ROSENBERG & ASSOCIATES, INC.    (800) 662-6878
www.rosenbergandassociates.com

74

1    would be required, and then communicate with them as
2    to how we were going to value neighborhoods, value
3    areas, value properties, and then also give some
4    input into what the final valuation would be on any
5    property in town.
6           Q.    And was it your responsibility to review
7    their work product?
8           A.    Yes.
9           Q.    And did you do that?
10          A.    To the best of my knowledge, I did that.
11          Q.    And were you satisfied with their work
12   product?
13          A.    I'm going to have to say I believe I
14   was.  I don't recall.
15          Q.    You don't recall?
16          A.    Right.
17          Q.    Why do you say today that you believe
18   you were?
19          A.    Because we completed the project, and we
20   put values on properties.
21                I have to suspect that I was comfortable
22   or satisfied with what they prepared.
23          Q.    Do you recall reviewing their valuation
24   conclusions with respect to property within the
25   municipality?

75

```
 1          A.    Yes.

 2          Q.    And since the revaluation was complete,

 3    your best belief at this time was you were satisfied

 4    with their work product?

 5          A.    That's what I have to believe that I

 6    thought at the time, yes.

 7          Q.    Sir, do you recall providing Cole Layer

 8    with the financial agreement that was entered into

 9    between the City and Marina Bay?

10          A.    Do I recall?  No, I don't recall.

11          Q.    Do you believe you did do that?

12          A.    I don't have any recollection of that at

13    all.

14          Q.    One way or the other?

15          A.    Yeah.  I might have.  I don't know.

16          Q.    Okay.

17          A.    They would have the ability to go into

18    any office.  I wouldn't have -- I don't believe I

19    ever had that document, but they could have gone to

20    whoever had the document, and that's where I would

21    have sent them.

22          Q.    Did Cole Layer visit the property we've

23    been focused on?

24          A.    I believe so.

25          Q.    Why do you believe so?
```

84

1    that evaluated the bids?

2          A.    No.

3          Q.    Did you have any input at all in the

4    bid -- the evaluation of the bids submitted by the

5    various prospective contractors?

6          A.    No.

7          Q.    What was your impression of the work

8    product of Cole Layer?

9          A.    I was satisfied.

10         Q.    Satisfied in all three instances?

11         A.    Yes.

12         Q.    Sir, do you recall whether you -- I

13   withdraw that.

14              In your prior testimony, you indicated

15   that you had looked at the master deed of the

16   property that we've been focused on.

17              Fair?

18         A.    Yes.

19         Q.    And that's how you concluded that the

20   property owner was Marina Bay?

21         A.    I don't know if I can answer that.  I

22   don't know if that was from the master deed or not.

23         Q.    Okay.

24         A.    I don't know.

25         Q.    You concluded that Marina Bay was the

126

```
 1  Wildwood.
 2        Q.    Would that be in digital form or in
 3  paper form?
 4        A.    Paper.
 5        Q.    Would that be in your desk amongst the
 6  paper you described earlier?
 7        A.    No.  I thought it would have been left
 8  on the countertop.
 9        Q.    It would have been left on a countertop?
10        A.    Sure, to look at, to review.
11        Q.    So that would be available for any
12  member of the public?
13        A.    Yeah.
14        Q.    Okay.
15        A.    At that time, it would have been.  I
16  can't tell you where it is now.
17        Q.    And where is that counter?  Is that
18  counter in the Tax Assessor's Office?
19        A.    In '06, it was.  It was in the front
20  part of the office.
21        Q.    Now, is that final land value map
22  something that Cole Layer would have prepared?
23        A.    Yes.
24        Q.    And you would have reviewed and approved
25  it?
```

**EXHIBIT C**

RTN (8517)
RONALD T. NAGLE, P.C.
52 South Street
Morristown, New Jersey 07960
Telephone: (973) 267-6780
Facsimile: (973-267-6738
Attorney for Plaintiff Beach Creek, Inc.

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BEACH CREEK MARINA, INC.<br><br>Plaintiffs,<br><br>v.<br><br>ROYAL TAX LIEN SERVICES, LLC<br>d/b/a CRUSADER LIEN SERVICES,<br>COLE LAYER TRUMBLE COMPANY,<br>And TYLER TECHNOLOGIES INC.,<br><br>Defendants. | CIVIL ACTION NO. 2:09-cv-2649<br><br><br>AFFIDAVIT OF MERIT<br>THEODORE J. LAMICELLA, JR. |

Theodore J. Lamicella, Jr. of full age, hereby certifies as follows:

1. I am a senior commercial appraiser and a state certified real estate appraiser. I have been such for at least five years prior to the date of this Affidavit. Attached hereto as Exhibit A is my curriculum vitae. I have been engaged by Plaintiff Beach Creek Marina, Inc. ("Beach Creek") in connection with this matter.

2. In connection with my retention by Beach Creek in this matter, I reviewed the contract (the "Contract") between Cole Layer Trumble Company ("Cole Layer") and the City of North Wildwood. I have also reviewed documents that Beach Creek received as a result of an OPRA request to obtain documents from the City of North Wildwood in connection with the assessment of Beach Creek's property as well as other pertinent documents.

3.      I have also spoken with Counsel for Beach Creek, Ronald T. Nagle, Esq. as to this matter.

4.      Based on my review of the aforesaid, I hereby state, pursuant to N.J.S.A. 2A: 53A-27, that there exists a reasonable probability that Cole Layer deviated from the applicable professional standards of care, skill and knowledge applicable to real estate appraisers in making the appraisal of Beach Creek's property.

I hereby certify that the foregoing statements made by me are true. I am aware that if any of the statements made by me are willfully false, I am subject to punishment.



_____
THEODORE J. LAMICELLA, JR.


Dated: September 28, 2009

2