NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| BEACH CREEK MARINA,<br><br>   Plaintiff,<br><br> v.<br><br>ROYAL TAX LIEN SERVICES, LLC,<br>TYLER TECHNOLOGIES, Inc., and COLE<br>LAYER TRUMBLE COMPANY,<br><br>   Defendants. | Civ. Action No. 09-2649  (KSH)<br><br><br><br><br><br>**OPINION** |

**Katharine S. Hayden, U.S.D.J.**

 **I. Background[1]**

  After a city-wide revaluation in 2006, the City of North Wildwood increased plaintiff's property taxes to $103,000, compared to $39,000 in 2005.  Where Beach Creek's property had an assessed value of $1,526,200 in 2005, the tax assessor, using appraisals prepared by defendants Tyler Technologies, Inc. and Cole Layer Trumble Company, raised the assessed value in 2006 to $14,612,900.

  Unsurprisingly, litigation ensued.  In December, 2006, Beach Creek filed a verified complaint against North Wildwood in state court, Chancery Division (Cape May County), seeking, among other relief, temporary and permanent restraints against the sale of real estate and/or municipal tax liens on the property.  The state court entered temporary restraints against

---

[1] The information in this section is taken from assertions in the first amended complaint filed June 3, 2009 and the decision of the Appellate Division in *Beach Creek Marina v. City of North Wildwood,* 2009 WL 1361651, slip op. attached as Exh. H to London-Zeitz Decl.

North Wildwood that enjoined it from conducting a tax sale; on the return date of January 4, 2007, the court vacated the restraints and transferred remaining issues to the Tax Court. A week later, at a tax sale conducted by North Wildwood, defendant Royal Tax Lien Services ("Royal") purchased a tax lien on plaintiff's property for $114,752. (Exh. D, attached to London-Zeitz Decl.)

In the Tax Court, plaintiff filed a complaint that appealed the 2006 assessment of the property. North Wildwood filed an answer, and successfully moved to dismiss the complaint on grounds that plaintiff's tax appeal, filed on January 18, 2007, was untimely filed. The Tax Court judge's conclusions, set forth in a written opinion dated March 5, 2008, were based "to a large extent" on the credibility of the witnesses who testified before him. Plaintiff appealed the tax court decision, and in a detailed opinion issued May 18, 2009, the Appellate Division affirmed the finding that to be timely the tax appeal had to be filed no later than January 16, 2007. The decision rested on the appellate court's determination that the record established that Paul Cocoziello, the sole officer and shareholder of Beach Creek, had actual notice of the company's tax obligation by at least, "and likely well before," December 1, 2006.

Within weeks of the Appellate Division opinion, plaintiff filed a complaint in federal court on diversity grounds raising common law claims against these defendants, the companies performing the appraisals under a contract with North Wildwood, and the purchaser of the tax lien certificate, which has paid taxes due and is, according to plaintiff, poised to foreclose on the certificate. This opinion will use the designations "Tyler" or "the appraisal defendant" when referring to defendants Tyler Technologies, Inc. and Cole Layer Trumble Company inasmuch as the latter was the wholly owned subsidiary of the former at the time of the appraisal work, and the companies have since merged. Against the appraisal defendant, then, plaintiff raises claims

of negligence, professional malpractice, breach of contract as a third-party beneficiary, unjust enrichment, and breach of implied covenant (Counts One through Five.)  Against Royal, plaintiff seeks declaratory judgment that the tax lien certificate it holds is void and invalid and sues for unjust enrichment (Counts Six through Eight).  Defendants have moved to dismiss on a variety of grounds.

### II. Legal Standard

The parties are familiar with, and do not dispute the standards governing motion practice under FRCP 12(b)(6), which  permits courts to dismiss a complaint for "failure to state a claim upon which relief can be granted.", and both Tyler and Royal invoke this rule.  Additionally, Royal has provided a few documents (relating to the procedural history of Beach Creek's challenges in state court) to bolster its motion for dismissal under FRCP 12(b)(1) on the grounds that this Court lacks subject matter jurisdiction..

Rule 12(b)(1) may be invoked in an attack on "the existence of subject-matter jurisdiction in fact, quite apart from any pleading."  *Cohen v. Kurtzman*, 45 F.Supp.2d 423, 428 (D.N.J. 1999) (Lechner, J.) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).  In such case, a court may "decide for itself the factual issues which determine jurisdiction." *Id.*  In doing so, "the Court is not confined to examining the face of the pleading, but may consider other evidence demonstrating the existence or lack of jurisdiction." *Kenny v. United States*, 2009 WL 276511, at *2 (D.N.J. 2009) (Brown, C.J.) (citing *Berardi v. Swanson Mem'l Lodge No. 48 of Fraternal Order of Police*, 920 F.2d 198, 200 (3d Cir. 1990)).  The party asserting jurisdiction bears the burden of demonstrating that jurisdiction is proper.  *Packard v. Provident Nat'l Bank*, 994 F.2d 1039, 1045 (3d Cir. 1993).

### III. Discussion

A. <u>FRCP 12(b)(1) Challenge to Subject Matter Jurisdiction under the Tax Injunction Act and Principles of Comity</u>

Royal accurately describes how this lawsuit arose from the "substantially increased assessment" and "augmentation" of plaintiff's real estate taxes and plaintiff's ensuing allegation that the reappraisal was inflated. (Royal Moving Br. 4.) Royal goes on to argue that this "implicates the New Jersey State tax system and its remedies, thereby depriving this Court of subject matter jurisdiction," relying on the Tax Injunction Act ("TIA"), 28 U.S.C. § 1341. (*Id.*)

The TIA provides that the district courts "shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." § 1341. By enacting the statute, Congress prohibited federal courts from interfering in the administration of state tax systems.

In applying the TIA, the Supreme Court has held that federal courts must refrain from interfering with state tax systems whether the taxpayer seeks an injunction, *see* 28 U.S.C.A. § 1341, or declaratory relief. *Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293, 299 (1943). In *Fair Assessment in Real Estate Ass'n v. McNary*, 454 U.S. 100 (1981), the Supreme Court expanded the TIA's prohibition to cover damage awards under § 1983 on the grounds that this legal remedy also unduly interferes with the collection of state taxes. *Id.* at 113-14. It reinforced this ban in *National Private Truck Council, Inc. v. Oklahoma Tax Commission*, when it noted: "Given the strong background presumption against interference with state taxation, the Tax Injunction Act may be best understood as but a partial codification of the federal reluctance to interfere with state taxation" and the "[t]he principle of comity which predated the Act was not

4

restricted by its passage." 515 U.S. 582, 590–91 (1995) (quoting *Fair Assessment*, 454 U.S. at 110).

The "plain, speedy and efficient remedy," which must be available in the state system to foreclose federal involvement in tax matters, must satisfy "minimal procedural criteria." *Rosewell v. LaSalle Nati'l Bank*, 450 U.S. 503, 512 (1981). In *General Motors Corp. v. City of Linden*, 143 N.J. 336, 350 (1996), the New Jersey Supreme Court held that the state's remedial procedures for challenging the validity of an *ad valorem* property tax administered by municipal officials, the same type of tax at issue in this matter, were adequate to invoke the TIA. In making this determination, the court in *General Motors* listed the numerous avenues for New Jersey tax payers to initially challenge, and appeal, tax assessments:

> A taxpayer may challenge the added assessment by appealing to the County Board of Taxation on or before December 1st of the year of the assessment. N.J.S.A. 54:4-63.11. The County Board must hear the appeal and render judgment within one month after the last day for filing such appeals. *Ibid*. If the taxpayer is still dissatisfied, he or she may appeal the Board's decision to the Tax Court within forty-five days of the Board judgment. *Ibid*. In the Tax Court, the taxpayer is entitled to a *de novo* hearing before a tax court judge with expertise in the field of real property valuation. N.J.S.A. 2B:13-3(b).

143 N.J. at 349.

Further, as the court noted, if a taxpayer loses its challenge in tax court, it may then appeal as a matter of right from the tax court to the Appellate Division of the Superior Court, pursuant to N.J.S.A. 2B:13-4. *Id.* If the taxpayer succeeds at any level, the taxing district must refund the excess taxes plus five-percent interest within sixty days of the final judgment. *Id.* (citing N.J.S.A. 54:3-27.2).

Beach Creek has pursued its state remedies, and this district has already decided that the state of New Jersey provides "plain, speedy and efficient remedy for aggrieved taxpayers," and that because of this federal courts should not interfere in these state taxation matters, even if plaintiffs failed to take advantage of the state remedies by missing deadlines. *See Jones v. Township of North Bergen*, 331 F. Supp. 1281, 1286 (D.N.J. 1971) ("Insofar as any of the plaintiffs have failed to make timely application to the appropriate State tribunals, this Court should not serve as an alternate forum."). In addition to the complaint that led to the appellate division opinion previously discussed, Beach Creek has filed tax appeals for the 2007, 2008 and 2009 property tax assessments in complaints filed in the Tax Court in March of 2007, 2008, and 2009. (Exh. I, attached to London-Zeitz Decl.) Significantly, the appellate court decision devoted significant space to Beach Creek's due process claims but ultimately rejected them. This demonstrates that not only has Beach Creek availed itself of the state court's "plain, speedy and efficient remed[ies]," but it has thoroughly litigated constitutional claims that it scrupulously avoids raising here, presumably to preserve the argument that the TIA does not apply where common law challenges are raised.

Indeed, Beach Creek's opposition papers argue that the TIA "has no application whatsoever" because this lawsuit does not "restrain an assessment, levy or collection of a tax under state law. The assessment and levy have already been made." (Pl.'s Opp. 8.) It further submits that because it does not seek restraints against defendants, the TIA "simply does not apply." (*Id*.) Beach Creek cites no authority to support its position. As to the reach of the TIA, Beach Creek asserts that *General Motors*, which Royal relies on, is inapplicable because it pertained to the viability of a claim under 42 U.S.C. § 1983 against a municipality, its tax assessor, and property appraiser for alleged due process violations in the tax assessment of a

6

property, while the case at hand involves "well settled common law claims." (Pl.'s Opp. 9.) Without providing a serious analysis of the court's reasoning, Beach Creek asserts that "review of the case makes clear that the Court's holding applied only to § 1983 claims asserted against the municipality." (*Id.*) However, a careful reading of *General Motors* indicates that the New Jersey Supreme Court's analysis of the state court system fully applies here, as the excerpted material, *supra*, makes clear.

In *Kerns v. Dukes*, 153 F.3d 96, 101 (3d Cir. 1998), the Third Circuit evaluated the viability of a claim seeking to challenge a municipality's purportedly "arbitrary and capricious" implementation of a sewer system and the accompanying sewer tax under both § 1983 *and* 33 U.S.C. § 1365(a)(2), the civil enforcement provision of the Clean Water Act. Using broad language, the court wrote,

> Taken together, the Tax Injunction Act and the Supreme Court's decision in [*Fair Assessment*] make it clear that a federal court cannot entertain a suit posing either an equitable or a legal challenge to state or local taxes ("any tax under state law") if a sufficient remedy (a remedy which the Tax Injunction Act terms "plain, speedy and efficient" and which comity views as "plain, adequate and complete") is available in state court.

*Kerns*, 153 F.3d at 101.

The Third Circuit noted that although the claim did not directly challenge the assessment of the sewer tax, the collateral challenge to the state tax procedure implicated the same concerns that mandate federal deference to state courts. *Id.* at 10. It reasoned that challenging an action that affects state tax collection may do no less damage to the state tax system than would a straightforward attack on the legitimacy of an assessment. *See id.* Accordingly, it held that "given this direct and substantial challenge to a system of assessments – i.e., taxes – that is now in place, we find unpersuasive the argument that the Property Owners' primary target is the

'arbitrary and capricious establishment of a sewer system' and that this somehow insulates the Property Owners' suit from the Tax Injunction Act and the demands of comity." *Id.* at 102–03.

By affirming dismissal of both claims for lack of subject-matter jurisdiction based on the TIA, the Third Circuit, in effect, foreclosed the notion that the reach of the TIA is limited to § 1983 claims. *See id.* Finally, very recently the Supreme Court decided *Levin v. Commerce Energy, Inc.*, --- S.Ct. ----, 2010 WL 2160787 (June 1, 2010), in an opinion which analyzes the Tax Injunction Act and district courts' administration of comity concerns in the context of a third party's standing to challenge the tax rights and obligations of another entity. On appeal from the district court, the Sixth Circuit had decided that the TIA and comity did not bar Levin's claim, because the circumstances were more in line with those of *Hibbs v. Winn*, 542 U.S. 88 (2004), a prior case in which the Supreme Court held that neither the TIA nor the comity doctrine barred a federal district court from adjudicating an Establishment Clause challenge to a state tax credit that allegedly funneled public funds to parochial schools   Although a third party's standing is not implicated in this matter, it should be noted that the Supreme Court in *Levin* also cited to *Fair Assessment* for the same propositions drawn from the case by this Court. In reversing the Sixth Circuit's decision, the Supreme Court decided that the prudential concern of comity precluded Levin's suit. It did not reach the TIA argument, but it used broad language to instruct that federal courts should defer to state taxation systems and that comity and the TIA work together to show federal courts' and Congress's reluctance to interfere with state tax issues.

The Court is satisfied that the TIA applies and requires dismissal of the first amended complaint in full. Because Counts Six and Seven seek declaratory relief, they also fail insofar as this Court is being asked to declare the tax lien certificate void and invalid. Additionally, any reasoned analysis of the balance of the claims based on negligence, breach of contract, and

quasi-contract unjust enrichment theories, leads to the conclusion that these counts are in essence seeking relief from the allegedly inflated tax assessments and related property taxes. As such, these counts also seek "to enjoin, suspend or restrain the assessment, levy or collection of any tax under State law," and they fail because the Court lacks subject matter jurisdiction under the TIA. § 1341.

### B. Rule 12(b)(6) Challenge to the First Amended Complaint Based on Subject Matter Jurisdiction

Properly viewed, then, as a lawsuit that directly involves the actions of the taxing authority, defendants' argument that this lawsuit is an untimely and misplaced tax appeal that should have been filed against the taxing authority in a state forum under the relevant statues, N.J.S.A. § 54:3-21, is pertinent and persuasive. Beach Creek attempts to duck the issue by asserting in paragraph 12 of the first amended complaint that "[Beach Creek] attempted to reconcile this situation with the City of North Wildwood but was not successful." *In other words, Beach Creek appealed and lost.* The Court agrees that the failure to file a timely tax appeal has created "an incurable, jurisdictional defect" that requires dismissal. All of the allegations in the first amended complaint relate to the tax assessment and the impending foreclosure, as to which the main actors are the tax assessor and the municipality employing the sale of tax lien certificates as an efficient means of getting the property taxes paid as they fall due.

Beach Creek has only added to its lack of credibility in bringing this suit by failing to join the taxing authority, North Wildwood, who is an indispensible party, but whose presence as a defendant would destroy complete diversity, thus eliminating the plaintiff's asserted federal jurisdiction base. In the absence of North Wildwood, it is difficult to comprehend how Beach

Creek expects to receive "compensatory and consequential damages, interest, costs of suit and all other equitable and legal relief to which it is entitled." North Wildwood, after all, contracted with the appraisal defendants and conducted the sale at which Royal purchased the tax lien certificate. (Royal Moving Br. 1; *see* Exh. D.)

In any event, seen in its best light as a collateral challenge, dismissal is required under *Kerns* where the Third Circuit directed that federal courts "cannot entertain a suit posing as an equitable or a legal challenge to state or local taxes . . . if a sufficient remedy . . . is available in state court." 153 F.3d at 101. In so finding, the Court rejects Beach Creek's assertion in its opposition brief that the time constraints governing a tax appeal may be overcome based upon N.J..S.A. § 54:5-100, a statute that comes into play in the context of a tax sale certificate foreclosure action. As Royal argues in its reply brief, § 54:5-100 offers limited defenses to a defendant in such an action, but the predicate for those defenses is a judgment after a timely tax appeal. Arguably, Beach Creek might be in a position to avail itself of the protections of § 54:5-100 with respect to its pending tax appeals of the 2007-2009 tax assessments, and in that regard, Royal's arguments in its moving brief that claims for damages related to those years are not ripe have force. Applied here, and obvious from Beach Creek's arguments in its opposition brief, the notion that § 54:5-100 trumps the 45-day requirement as to the 2006 assessment would effectively eviscerate the specific and very brief time period for filing a tax appeal and "create an unlimited statute of limitations" (*see* Royal's Reply Brief at p. 6).

C. Remaining Arguments for Dismissal under Rule 12(b)(6)

The appraisal defendant, Tyler, argues that the common law claims arising under contract theory fail to raise a cause of action upon which relief may be granted because it contracted with North Wildwood, and Beach Creek is not a third-party beneficiary. The Court agrees. Tyler is

also correct that Beach Creek has no claim against it for unjust enrichment because North Wildwood, not Beach Creek, paid for its services, and any taxes owed are payable to North Wildwood.  As to the negligence/malpractice claims, Tyler correctly points out that it owed a duty to North Wildwood to perform its services satisfactorily, and its conclusions are not binding on the tax assessor, whom it served in an advisory capacity.  As such, it properly relies on *J.H. Becker, Inc. v. Twp of Marlboro,* 82 N.J.Super. 519 (App. Div. 1964), which is on point.

It is not necessary to delve into these arguments or those made in Sections III and IV of Royal's moving brief with more particularity because the Court is convinced that dismissal is warranted under the TIA and the principles of comity regularly recited in decisions of the United States Supreme Court and the Third Circuit.

Beach Creek swiftly filed in federal court after the Appellate Division ruled against it and Royal was in a position to foreclose.  (Royal Moving Br. 2.)  In fact, it seems as though Beach Creek brought this federal lawsuit in order to bypass the impending foreclosure and to avoid the unfavorable ruling, a classic endrun worthy of a ball carrier but not tolerated here.  With respect to this litigation strategy the *Jones* court, before dismissing a similar claim, disapprovingly noted: "Ingenuity in framing allegations to bring litigation across the federal threshold and by-pass State courts has been energetically employed. The burden cast upon federal district courts by matters for which the State provides appropriate and competent tribunals is becoming tremendously heavy."  331 F. Supp. at 1286.

## IV. Conclusion

Based on the foregoing, the amended complaint is **dismissed** for lack of subject-matter jurisdiction pursuant to FRCP 12(b)(1) and 12(b)(6).  An appropriate order will be entered.


/s/ Katharine S. Hayden

Katharine S. Hayden, U.S.D.J.